[No. B054487. Second Dist., Div. Four. Aug. 6, 1992.]

HAK FU HUNG, Plaintiff and Appellant, v.
WARREN WANG et al., Defendants and Respondents;
DAVID L. SHARP, Objector and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV and V.

COUNSEL

David L. Sharp, in pro. per., for Objector and Appellant and for Plaintiff and Appellant.

Robie & Matthai, James R. Robie, Pamela E. Dunn, Laura K. Legge, Lum, Roberts & Gutierrez and Michael W. Roberts for Defendants and Respondents.

## OPINION

**EPSTEIN, J.**—This appeal arises from a dispute surrounding the windup and dissolution of a closely held accounting corporation. Hak Fu Hung, a shareholder of the corporation, filed a complaint alleging that respondent attorneys conspired with their clients, also shareholders of the corporation, to loot the corporate assets.

Hung appeals from a trial court order dismissing his complaint for failure to obtain court approval to file a complaint containing conspiracy allegations

against attorneys as required by Civil Code section 1714.10.[1] He raises three constitutional challenges to the validity of the statute. We conclude that only his argument that section 1714.10 violates the right to jury trial raises a substantial question.

In the published portion of this opinion, we conclude that section 1714.10, properly construed, does not require judicial factual determinations which infringe on the right to jury trial. We also hold that the statute does not offend the constitutional rights to due process and equal protection of the law. Having concluded that section 1714.10 is valid, we must also conclude that appellant was required to follow the petition procedure specified by the statute before filing an action alleging a conspiracy between an attorney and the attorney's client. We reject appellant's challenge to the propriety of an earlier trial court order denying a petition for leave to allege the conspiracy causes of action, because we have no jurisdiction to review that order.

In the unpublished portion of this opinion we reject appellant's several arguments directed at application of section 1714.10 to the instant case. We

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

As originally enacted in 1988, and as in effect when the petition was filed, section 1714.10 provided: "No cause of action against an attorney based upon a civil conspiracy with his or her client shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes a claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. The court shall order service of the petition upon the party against whom the action is proposed to be filed and permit that party to submit opposing affidavits prior to making its determination. The filing of the petition, proposed pleading and accompanying affidavits shall toll the running of any applicable statute of limitations until the final determination of the matter, which ruling, if favorable to the petitioning party, shall permit the proposed pleading to be filed."

In 1991, the statute was amended to read: "(a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint . . . . [¶] (b) Failure to obtain a court order where required by subdivision (a) shall be a defense to any action for civil conspiracy filed in violation thereof. The defense shall be raised by the party charged with civil conspiracy upon that party's first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate. Failure to timely raise the defense shall constitute a waiver thereof. [¶] (c) This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (Stats. 1991, ch. 916, § 1.) This amendment was effective January 1, 1992. (*Pierce* v. *Lyman* (1991) 1 Cal.App.4th 1093, 1107 [3 Cal.Rptr.2d 236].) It therefore does not apply to this case and we need not and do not express an opinion as to its purpose or validity.

also find no abuse of discretion in the trial court's order dismissing the complaint in its entirety rather than striking only the conspiracy allegations. Finally, we conclude that the trial court did not make the finding of bad faith required for a monetary sanctions order against an attorney under Code of Civil Procedure section 128.5. On that basis, we reverse the award of sanctions.

### FACTUAL AND PROCEDURAL SUMMARY

In 1982, Warren Wang, David Wong, Hak Fu Hung and Edward Yu organized the accountancy corporation of Wang, Wong, Hung & Yu. (We refer to this entity as the corporation.) Wang and Wong each owned 32.5 percent of the shares, appellant owned 25 percent, and Yu owned 10 percent.

Until the dissolution of the corporation in December 1989, Wang served as president and Yu as secretary. Wong served as vice-president until his resignation and Hung, the appellant, served as treasurer until his resignation.

In June 1985, appellant took a leave of absence from the corporation to travel to Hong Kong, remaining there for more than a year. The corporate officers had agreed that if he stayed in Hong Kong for more than one year, appellant would relinquish his ownership interest in the firm, and would receive compensation based on the value of his interest when he left.

In January 1988, Wong decided to leave the corporation and entered into negotiations with Wang and Yu for the purchase of his interest. In June, 1988, while these negotiations were still in progress, Wong resigned from the firm.

At the same time, Wang and Yu retained respondents Ronald J. Grant and the firm of Tilles, Webb, Kulla & Grant to represent them in the negotiations with Wong. Shortly thereafter, Wang, acting as president of the corporation, retained Grant and his firm to represent the corporation. (We refer to Grant and the law firm as the lawyers.)

In July 1988, appellant learned that the other officers were considering dissolution of the corporation, and retained L. David Sharp to represent his interests. The shareholders and their respective counsel met several times in August and September to discuss the winding up and dissolution of the corporation. In August, Sharp asked that Grant withdraw as counsel for the corporation because of a conflict of interest arising from his dual representation of Wang and Yu. Grant refused to withdraw.

On September 28, 1988, Grant prepared a written consent of the shareholders to the election to wind up and dissolve the corporation pursuant to

Corporations Code section 1900, subdivision (a). This document was sent to counsel for Wong, but not to appellant's attorney. Wong gave written consent to wind up and dissolve the corporation. Sharp and counsel for Wong received copies of the dissolution documents in October 1988.

Grant hired an appraiser who determined the value of the corporation's office furniture and equipment. An acrimonious round of correspondence between Grant and Sharp ensued. Sharp renewed his demand that Grant withdraw as corporate counsel. After Sharp threatened to seek appointment of a receiver for the corporation and to disqualify Grant, the lawyers withdrew from representation of the corporation in February 1989.

In early March 1989, Grant withdrew from the settlement negotiations following continuing demands for his resignation by Sharp. Wang and Yu retained new counsel to represent them in the settlement negotiations, which were fruitless.

In September 1989, appellant filed a verified petition under section 1714.10 for an order allowing him to file a complaint which would include causes of action alleging that Grant and his law firm had conspired with Wang and Yu to defraud appellant and the corporation.

Attached to the petition was the complaint appellant proposed to file. The proposed complaint contained two causes of action against the lawyers for conspiracy to defraud: one by plaintiff in his individual capacity, and one on behalf of the corporation as a shareholder's derivative action. The petition was supported by declarations of Hung and Sharp and by extensive exhibits.

The lawyers opposed the petition, submitting a declaration by Grant and voluminous exhibits. The lawyers argued that they had committed no civil wrong by advising their clients on the dissolution and windup of the corporation. Appellant filed a reply supported by a supplemental declaration by Sharp and an additional 44 pages of exhibits.

The petition came on for hearing on October 6, 1989. The court denied the petition. In its minute order, the court explained that "Petitioner has failed to show even a possibility (let alone a 'reasonable probability') that a civil conspiracy could be proved. (See Civil Code section 1714.10.) [¶] To suggest that an attorney advising his clients is per se guilty of conspiracy is to explain why Civil Code section 1710.10 [sic] was enacted. [¶] Majority shareholders have a right to dissolve their corporation and the attorneys assisting them towards achieving that goal are not doing anything wrong. [¶] Assuming there was ever a conflict of interest, it has been resolved by the

attorney's withdrawal and its prior existence does not support a conspiracy theory."

On December 4, 1989, appellant filed a petition for writ of mandate seeking appellate review of the trial court's ruling. We denied the petition for absence of facts showing entitlement to extraordinary relief.

Before we issued our denial of appellant's petition for writ of mandate, appellant filed a complaint for damages against Wang, Yu, Wang & Yu, and the lawyers, and unnamed Doe defendants. In his opening brief, appellant explains "This was done to challenge the constitutionality and applicability of *Civil Code* § 1714.10." This complaint initiated the lawsuit from which the present appeal was taken. The complaint was brought on behalf of appellant in both his individual capacity and as a shareholder on behalf of the corporation, but was never served on the lawyers.

Shortly after we denied the petition for mandate, appellant filed and served a first amended complaint for damages against the lawyers and their clients. In his individual capacity, appellant alleged causes of action for bad faith dissolution (against the clients only), "concert of action," fraud and deceit, constructive fraud, breach of fiduciary duty, professional negligence, and intentional infliction of emotional distress. The derivative causes of action alleged conspiracy to defraud, fraud and deceit, and professional negligence. With the exception of the cause of action for bad faith dissolution, each cause of action incorporated the allegations of the cause of action for "concert of action."

The lawyers moved to strike the complaint on the ground that appellant had violated the mandate of section 1714.10. They argued that the allegations of the cause of action for "concert of action" were virtually identical to the conspiracy cause of action alleged in the proposed complaint previously reviewed by the trial court in the section 1714.10 proceedings.

Appellant opposed the motion to strike and the lawyers filed a reply. The trial court took the matter under submission following lengthy argument. Ultimately, the trial court issued an order granting the motion to strike the complaint and dismissing the action.[2]

The lawyers filed a memorandum of costs in the amount of $163. Appellant moved to tax costs, arguing that the lawyers were not "prevailing parties" within the meaning of Code of Civil Procedure section 1032,

---

[2]While the trial court's order bears a June 1990 date and file stamp, the parties did not receive notice of the order until September 1990.

subdivision (b). The lawyers opposed the motion to tax costs and sought an award of sanctions on the ground that appellant's motion was frivolous and brought in bad faith.

The trial court denied the motion to tax and imposed sanctions in the amount of $546.25 against Sharp. Appellant Sharp filed a petition for writ of mandate to review the sanctions order; the petition was denied. Appellants then filed a notice of appeal from the order dismissing the complaint and the order imposing sanctions. The notice also purported to appeal from the earlier order denying the section 1714.10 petition.

DISCUSSION

I

*Constitutionality*

A. *Legislative History*

Appellant directs substantial argument to his view of the circumstances that led to enactment of section 1714.10, and to challenging its wisdom. Neither his view nor ours of the wisdom of that statute is of any moment. We must uphold the statute unless it is constitutionally infirm.

As we shall discuss, appellant argues that the statute is unconstitutional, in part, because it lacks a sufficient public purpose. We begin, therefore, by reviewing the legislative materials that may inform the purpose for enactment of the statute. (See *Barme* v. *Wood* (1984) 37 Cal.3d 174, 180 [207 Cal.Rptr. 816, 689 P.2d 446].) In doing so, we have examined pertinent legislative committee analyses prepared during the legislative review and enactment process. (See *Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 382 [267 Cal.Rptr. 569, 787 P.2d 976].)[3]

An uncodified section of the enacting statute expresses the legislative intent: "It is the intent of the Legislature in enacting this measure to modify the decision of the Court of Appeal in Wolfrich Corp. v. United Services Automobile Assn., 149 Cal.App.3d 1206 (1st Dist. 1983)." (Stats. 1988, ch. 1052, § 2, p. 3408.)

In *Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446], an automobile owned by plaintiffs was

---

[3]Pursuant to Evidence Code sections 455 and 459, we notified the parties of our intention to take judicial notice of the legislative history of the statute and afforded them the opportunity to present relevant information.

damaged as a result of the negligence of United Services Automobile Association's insured. The plaintiffs sued and, after the association made no attempt to settle, received a judgment in their favor. (149 Cal.App.3d at p. 1209.) The plaintiffs filed a second action, alleging that the attorneys for the association had conspired with their client to violate Insurance Code section 790.03, subdivision (h)(5). (149 Cal.App.3d at pp. 1209-1210.) The *Wolfrich* court ruled that "Attorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy." (149 Cal.App.3d at p. 1211.)

During the 1987-1988 regular session, legislation was introduced to add section 1714.10 to the Civil Code. (Sen. Bill No. 2337.) The analysis prepared by the Assembly Subcommittee on the Administration of Justice reflects that the measure was introduced because defense counsel were "routinely" being threatened with claims that they were conspiring with their insurance company clients in refusing to settle tort actions. As a result of threatened and actual litigation, defense counsel were required to notify their malpractice insurance carriers, resulting in increased premium costs.

It also was claimed that conspiracy allegations had been used to raise allegations of conflict of interest between defense attorneys and their clients. According to the sponsor of the legislation, these conflict of interest allegations had forced some insurance companies to obtain new representation on short notice.

The committee analysis also noted a precedent: Code of Civil Procedure section 425.13 requires that a plaintiff seeking punitive damages against a health care provider obtain court permission before pleading that allegation, and it conditions such leave to file on the demonstration of a "substantial probability" that the plaintiff will prevail.[4]

With this legislative background in mind, we turn to an examination of appellant's constitutional arguments.

---

[4]Code of Civil Procedure section 425.13 provides in pertinent part: "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier." (See also § 3294, subd. (c) [showing of "substantial probability" of prevailing required for punitive damages discovery].)

B. *Legislative Authority*

Appellant argues that section 1714.10 violates his right to a meaningful opportunity to be heard by an impartial decision maker, guaranteed by the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and by California Constitution, article I, section 7. He asserts that he was deprived of his fundamental right of access to the courts. Appellant also argues that the statute violates his constitutionally guaranteed right to equal protection of the law. Finally, he argues that he was deprived of his constitutional right to jury trial.

■ The right of a potential litigant to the use of judicial procedures is constitutionally protected by the prohibitions against state deprivation of property without due process of law. (See *Logan* v. *Zimmerman* (1982) 455 U.S. 422, 428-429 [71 L.Ed.2d 265, 272-274, 102 S.Ct. 1148] [holding that a cause of action is a species of property protected by due process]; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 914, fn. 3 [132 Cal.Rptr. 405, 553 P.2d 565].) The potential litigant is also protected by a constitutional right of access to the courts for all persons. (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 118, 91 S.Ct. 780].)

The United States Supreme Court addressed the interplay of these constitutional rights in *Logan* v. *Zimmerman, supra,* 455 U.S. at page 430, footnote 5 [71 L.Ed.2d at page 274]: "The Court's cases involving the right of access to courts provide an analogous method of analysis supporting our reasoning here. In *Boddie,* the Court established that, at least where interests of basic importance are involved, 'absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.' . . . . The relationship between these opinions and the right to procedural due process at issue in the instant case is made clear in *Boddie,* which relied in large part on the analysis of *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) [94 L.Ed. 865, 70 S.Ct. 652], and its guarantee 'to all individuals [of] a meaningful opportunity to be heard.' [Citation.] Thus, while the right to seek a divorce may not be a property interest in the same sense as is a tort or a discrimination action, the theories of the cases are not very different: having made access to the courts an entitlement or necessity, the State may not deprive someone of that access unless the balance of state and private interests favors the government scheme."

■ It is well established, however, that state legislative bodies retain the authority to determine what is and what is not an actionable tort, and to decide the conditions under which suits for these alleged wrongs will be

entertained—so long as the statutes they enact are rationally based and do not draw constitutionally prohibited distinctions.

This approach to legislative authority is reflected in *Cohen* v. *Beneficial Loan Corp.* (1949) 337 U.S. 541 [93 L.Ed. 1528, 69 S.Ct. 1221]. In that case, a minority shareholder alleged that the defendant corporation and certain of its managers and directors had engaged in a conspiracy to defraud and mismanage the corporation by wasting and diverting its assets. (*Id.* at p. 543 [93 L.Ed.2d at p. 1535].) The corporate defendant moved to require the plaintiff to provide security for its reasonable expenses and attorney fees pursuant to the applicable New Jersey statute. (*Id.* at pp. 544-545 [93 L.Ed.2d at pp. 1535-1536].)

The Supreme Court rejected due process and equal protection challenges to the validity of the statute and emphasized the plenary power of a state legislature in enacting such a statutory scheme. "The wisdom and policy of this and similar statutes are involved in controversies amply debated in legal literature but not for us to judge, and hence not for us to remark upon. The Federal Constitution does not invalidate state legislation because it fails to embody the highest wisdom or provide the best conceivable remedies. Nor can legislation be set aside by courts because of the fact, if it be such, that it has been sponsored and promoted by those who advantage from it. In dealing with such difficult and controversial subjects, only experience will verify or disclose weaknesses and defects of any policy and teach lessons which may be applied by amendment. Within the area of constitutionality, the states should not be restrained from devising experiments, even those we might think dubious, in the effort to preserve the maximum good which equity sought in creating the derivative shareholder's action and at the same time to eliminate as much as possible its defects and evils." (*Cohen* v. *Beneficial Loan Corp.*, *supra*, 337 U.S. at pp. 550-551 [93 L.Ed.2d at pp. 1538-1539], fns. omitted.)

The *Cohen* court concluded: "A state may set the terms on which it will permit litigants in its courts. . . . [W]e deal with power, not wisdom; and we think . . . it is within the power of a state to close its courts to this type of litigation if the condition of reasonable security is not met." (337 U.S. at p. 552 [93 L.Ed.2d at p. 1539]; see also *Martinez* v. *California* (1980) 444 U.S. 277, 282 [62 L.Ed.2d 481, 487, 100 S.Ct. 553] [upholding immunity provision of the California Tort Claims Act (Gov. Code, § 815) and adding that "even if one characterizes the immunity defense as a statutory deprivation, it would remain true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly

arbitrary or irrational"]; *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 481 [58 Cal.Rptr. 249, 426 P.2d 753] [upholding prefiling claims requirements of Tort Claims Act]); *Taliaferro* v. *Hoogs* (1965) 236 Cal.App.2d 521, 526 [46 Cal.Rptr. 147] [upholding validity of the vexatious litigant statutes (Code Civ. Proc., § 391 et seq.) under which plaintiff in propria persona may be required to furnish security upon a showing that he or she is a vexatious litigant without "a reasonable probability" of prevailing against the moving defendant].)

## C. *Due Process*

Appellant contends that the statutory scheme fails to meet the minimum requirements of due process because it provides for neither an impartial decision maker nor an opportunity for discovery, and because the showing required in support of the petition pursuant to section 1714.10 is higher than the burden of proof imposed at trial.

■ The controlling constitutional principle is well established. " 'This court cannot invoke the due process clause to invalidate a legislative policy that it may deem unwise without exercising judicial censorship directed not at the constitutionality of legislation but at its wisdom, . . . "We are asked to agree with respondents and call the statute arbitrary and unreasonable. [¶] Looking through the form of this plea to its essential basis, we cannot fail to recognize it as an argument for invalidity because this Court disagrees with the desirability of the legislation. We rehearse the obvious when we say that our function is thus misconceived. We are not equipped to decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. *The forum for the correction of ill-considered legislation is a responsive legislature.*" [Citation.]' (Italics added.)" (*Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 438 [174 Cal.Rptr. 500, 629 P.2d 8].)

A pretrial hearing procedure similar to that established by section 1714.10 was found to satisfy the requirements of due process in *Shannon* v. *Sims Service Center, Inc.* (1985) 164 Cal.App.3d 907, 914 [210 Cal.Rptr. 861]. In *Shannon*, the court rejected a due process challenge to Code of Civil Procedure section 1030, which provides that a nonresident plaintiff may be required to file an undertaking to secure a possible award of costs and attorney fees in favor of the defendant. The statutory basis for the order for an undertaking is a showing that "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding." The motion must be accompanied by supporting affidavits setting forth the nature and amount of the costs and fees the defendant expects to incur by the conclusion of the action.

The *Shannon* court upheld the procedural sufficiency of the statute: "[T]he statutory hearing procedure is the one usually prescribed for pretrial motions, that is, the opportunity to present declarations and other documentary evidence, the opportunity for both counsel to be present, and the opportunity to be heard. Evidence was presented, and counsel were present and heard in this case." (164 Cal.App.3d at p. 913; see also *Beyerbach* v. *Juno Oil Co.* (1954) 42 Cal.2d 11, 15-16, 24 [265 P.2d 1] [court rejected due process challenge to former Corp. Code, § 834, provision of which was similar to N. J. statute reviewed in *Cohen*].)

■ Appellant argues that he cannot receive a fair hearing before any judge because judges are attorneys and are therefore biased in favor of attorneys named as defendants in petitions brought pursuant to section 1714.10. The argument is patently spurious. Appellant cites no authority for his contention and fails to suggest any alternative for adjudication of legal claims. The state Constitution requires that judges of the state courts be selected from members of the State Bar. (Cal. Const., art. VI, § 15.) Appellant has made no showing of a deprivation of the right to a fair and impartial tribunal. (See *Kloepfer* v. *Commission on Judicial Performance* (1989) 49 Cal.3d 826, 833-834 [264 Cal.Rptr. 100, 782 P.2d 239, 89 A.L.R.4th 235].)

■ Appellant also argues that the absence of a provision for formal pretrial discovery prior to the hearing under section 1714.10 renders the statute unconstitutional. We need not discuss the validity of a total preclusion of discovery in a section 1714.10 petition, since no such preclusion appears. A section 1714.10 hearing is a special proceeding of a civil nature. As such, it is an "action" within the compass of the Civil Discovery Act of 1986. (Code Civ. Proc., § 2016, subd. (b)(1).)

■ Appellant also asserts that his right to due process is violated because, he claims, section 1714.10 imposes a standard of proof higher than the traditional preponderance of the evidence standard applied at trial. Under section 1714.10 appellant must establish a "reasonable probability" that he will prevail on the merits of his conspiracy claim.

We discuss the reasonable probability provision more fully, *post*, in our review of appellant's claim of a violation of his right to jury trial. With respect to his due process challenge, we observe that appellant has cited no authority for the proposition that "reasonable probability" is in fact a higher standard than preponderance of the evidence, and we conclude that it is not.

■ We conclude that section 1714.10 is rationally related to the legislative goal of reducing unmeritorious conspiracy claims against attorneys.

■ As we have seen, the statute provides a plaintiff the opportunity to submit a verified petition, the proposed complaint, and supporting affidavits. (§ 1714.10, subd. (a).) The court must consider these, as well as any opposing affidavits, prior to determining whether the plaintiff has established that "there is a reasonable probability that the party will prevail in the action." This statutory scheme is within the Legislature's plenary power to prescribe procedures defining and limiting tort litigation. (See *Cohen* v. *Beneficial Loan Corp., supra,* 337 U.S. at p. 551 [93 L.Ed.2d at p. 1539].)

## D. *Equal Protection*

Appellant argues that equal protection analysis requires a showing that section 1714.10 serves a compelling state interest. He contends that the interests served by this statute do not satisfy that test. We disagree with appellant's argument regarding the appropriate level of scrutiny, and conclude that the statute satisfies the requirements of equal protection.

■ As a general rule, the rational basis test is the appropriate standard for the review of legislative classifications among tort plaintiffs. (See *Young* v. *Haines* (1986) 41 Cal.3d 883, 899 [226 Cal.Rptr. 547, 718 P.2d 909] .) "A classification scheme is invalid if it does not meet the 'constitutional demand of rationality.' [Citation.]" (*Id.* at p. 899.) ■ " 'As the United States Supreme Court recently phrased the federal constitutional standard: "The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " [Citation.] Thus, when a statute provides that one class shall receive different treatment from another, our constitutional provisions demand more "than nondiscriminatory application within the class . . . establish[ed] . . . . [They] also [impose] a requirement of some rationality in the nature of the class singled out." [Citations.]' (*Brown* v. *Merlo, supra,* 8 Cal.3d at pp. 861-862, italics omitted.) The equal protection clause of the California Constitution (Cal. Const., art. I, § 7) also requires some rational relationship between the legislative goal and the class singled out for unfavorable treatment. [Citation.]" (*Young* v. *Haines, supra,* 41 Cal.3d at pp. 899-900.)

Other California statutes directed toward a single class of personal injury plaintiffs have been upheld against equal protection challenges.

One of these is the Medical Injury Compensation Reform Act (MICRA), enacted in 1975, in response to a crisis in the cost of medical malpractice insurance. (Stats. 1975, Second Ex. Sess., ch. 2, § 12.5, p. 4007; *Young* v. *Haines, supra*, 41 Cal.3d 883, 893-894.) Provisions of that statute have withstood equal protection challenges brought on the ground that plaintiffs in medical malpractice actions were treated differently from other personal injury plaintiffs. (*Young* v. *Haines, supra*, 41 Cal.3d at p. 901 [tolling provisions of the reduced statute of limitations for initiating malpractice actions, (Code Civ. Proc., § 340.5)]; *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 369 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233] (Code Civ. Proc., § 667.7 [establishing periodic payment of damages of $50,000 or more]); *Barme* v. *Wood, supra*, 37 Cal.3d 174, 180-182 (§ 3333.1, subd. (b) [abrogating the collateral source rule in medical malpractice actions]); *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 923 [211 Cal.Rptr. 77, 695 P.2d 164] (Bus. & Prof. Code, § 6146 [limiting plaintiff's attorney fees]); *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 161-164 [211 Cal.Rptr. 368, 695 P.2d 665] (§ 3333.2 [limiting noneconomic damages and modifications of the collateral source rule pursuant to § 3333.1, subd. (a)].) In each of these decisions, the Supreme Court determined that the relevant MICRA provision bore a rational relationship to the goal of easing the medical malpractice crisis. (See *Young* v. *Haines, supra*, 41 Cal.3d at pp. 899-900.)

As we have seen, the California Tort Claims Act, which imposes a claims filing requirement upon plaintiffs who wish to pursue a tort cause of action against a governmental entity or employee (Gov. Code, § 915), also has been upheld against the argument that it denies claimants the equal protection of the laws. (See *Tammen* v. *County of San Diego, supra*, 66 Cal.2d at p. 481; *Stone* v. *State of California* (1980) 106 Cal.App.3d 924, 930-931 [165 Cal.Rptr. 339]). As stated in *Taliaferro* v. *Hoogs, supra*, 236 Cal.App.2d 521, 527, "[t]here is no constitutional requirement of uniform treatment of all persons but only that there be a reasonable basis for each classification."

 Section 1714.10 is rationally related to the Legislature's goal of relieving a perceived increase in legal malpractice insurance premiums and recusal of counsel resulting from claims that attorneys tortiously conspired with their clients. This is a peculiar harm which does not arise when nonattorneys are joined in a conspiracy cause of action. Section 1714.10 does not violate appellant's right to equal protection of the law.

E. *Right to Jury Trial*

Appellant claims that section 1714.10 violates his state constitutional right to jury trial. It does that, he argues, because it calls upon the trial judge who

hears the section 1714.10 petition to weigh the evidence on both sides and to allow the petitioner to file the proposed conspiracy lawsuit only if the court determines that the petitioner will probably prevail on that issue.

As we shall explain, we agree that if section 1714.10 did require trial judges to weigh and adjudicate a factual dispute in this manner, it would violate the jury clause of the California Constitution. We conclude, however, that construing the statute to require that adjudication is not the most logical reading of the provision, and that any ambiguity that may exist on the issue must be resolved in favor of a construction that preserves the statute, rather than one that renders it unconstitutional.

We note at the outset that a section 1714.10 petition invokes a special proceeding (Code Civ. Proc., §§ 21, 22, 23) and that there is no statutory right to jury trial on the merits of the section 1714.10 petition itself. (See *County of Sacramento* v. *Superior Court* (1974) 42 Cal.App.3d 135, 140-141 [116 Cal.Rptr. 602]; cf. Code Civ. Proc., § 1171 [statutory right to jury trial in unlawful and forcible detainer proceedings].) The issue here, of course, is whether the statute cuts off appellant's constitutional right to have a jury determine the merits of his factual contentions of conspiracy. To resolve that issue, we begin with a review of the right invoked.

The Seventh Amendment to the United States Constitution, which guarantees a federal right to jury trial in civil cases, is not binding on the states. (*Jehl* v. *Southern Pac. Co.* (1967) 66 Cal.2d 821, 827 [59 Cal.Rptr. 276, 427 P.2d 988.) Therefore, we confine our analysis to the California Constitution. The right to jury trial is secured by article I, section 16 of the California Constitution. "Trial by jury is an inviolate right and shall be secured to all, . . ."

In California, the constitutional right to jury trial in civil cases is coextensive with the right as it existed under the common law of England in 1850, when the California Constitution was adopted. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832].) " 'The right has always been regarded as sacred and has been jealously guarded by the courts. [Citation.]' " (*Id.* at p. 287, fn. 1.) It is the function of the jury to determine questions of fact. (See *Dimick* v. *Schiedt* (1935) 293 U.S. 474, 486 [79 L.Ed. 603, 55 S.Ct. 296, 95 A.L.R. 1150]; *Walker* v. *Superior Court* (1991) 53 Cal.3d 257, 269-270 [279 Cal.Rptr. 576, 807 P.2d 418]; Note, *Reforming Tort Reform: Is There Substance to the Seventh Amendment?* (1989) 38 Cath.U.L.Rev. 737, 748-749 (hereafter *Reforming Tort Reform*).)

It is not a static right. "[T]he 'constitutional guarantee does not require adherence to the letter of common law practice, and new procedures

better suited to the efficient administration of justice may be substituted if there is no impairment of the substantial features of a jury trial.' [Citation.]" (*Jehl* v. *Southern Pac. Co.*, *supra*, 66 Cal.2d 821, 828-829; see *Reforming Tort Reform*, *supra*, at pp. 755-761.)

In *Jehl*, the Supreme Court upheld the additur procedure against a challenge that it impaired the right to jury trial. Writing for a unanimous court, Justice Traynor rejected an argument that the procedure required unconstitutional judicial factfinding. "Courts often determine fact issues, however, and the acceptance of this practice over many years refutes the argument that the framers of the constitution regarded the jury as the only competent finder of facts. Decisions by the court admitting or excluding evidence at trial involve factual determinations as do those pertaining to the court's jurisdiction, the sufficiency of pleadings, and the interpretation of documents. Other instances of judicial or quasijudicial fact-finding are found in equity, admiralty, probate, divorce, bankruptcy, and administrative proceedings." (66 Cal.2d at p. 830.)

Appellant argues that the statute violates his right to a jury determination because, he says, it calls upon the court to weigh the evidence submitted in the opposing declarations in order to decide whether the petitioner will prevail on the attorney-client conspiracy theory at trial. Appellant argues that the decisionmaking required under section 1714.10 differs from the kind of determinations that are made on a demurrer to a complaint, where only the sufficiency of the pleading to state a cause of action is tested. The adjudicative authority of the trial court is also different from that exercised on a motion for summary judgment pursuant to Code of Civil Procedure section 437c, a statute that limits the court to deciding whether there is a triable issue of disputed fact. Neither of these procedures, he points out, allows the court to resolve the merits of a disputed factual claim. By contrast, section 1714.10, as appellant would have us construe it, requires the trial court to do precisely that. And in that, he argues, the statute calls upon the trial court to invade the function that would be performed by the jury at a plenary trial.

The position taken by the lawyers has evolved during the course of the appeal. In their original brief, they argued that the questions to be resolved on a section 1714.10 petition are purely legal and therefore within the province of the trial court at a special proceeding. In a supplemental memorandum, respondents argue that section 1714.10 is constitutional because the trial court is required to grant the petition if the allegations of conspiracy are sufficient as a matter of law and the petitioner's prima facie showing raises a factual question as to whether he or she will prevail in the

action. So construed, they argue, the statute does not infringe upon the right to jury trial because no factual determinations are made by the trial court.[5]

■ With this constitutional backdrop in place, and the arguments of counsel in mind, we turn to the plain language of the statute itself. Unless that language is ambiguous, there is no need for construction. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].)

The statutory language at issue reads: "No cause of action against an attorney based upon a civil conspiracy with his or her client shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes a claim for civil conspiracy to be filed *after the court determines* that the party seeking to file the pleading *has established that there is a reasonable probability that the party will prevail* in the action." (Italics added.) Section 1714.10 provides that the trial court's determination is to be based upon the verified petition, supporting affidavits, the proposed pleading and opposing affidavits.

■ What does the quoted language require a petitioner to demonstrate? The phrase, "a reasonable probability" may be taken to mean that the petitioner must show that he or she has a case that will survive a motion for nonsuit and that, if successful, will be supported by sufficient evidence to warrant affirmance on appeal. This construction gives to the noun "probability" its literal meaning as descriptive of the relative likelihood of an outcome. (See Black's Law Dict. (5th ed. 1979) p. 1081, col. 1.) The adjective "reasonable" requires the petitioner to do more than demonstrate *some* chance of winning; the petitioner must show that, given the evidence, he or she has a substantial case.

If the Legislature had intended to require a petitioner to not only show a cognizable case but also that it is a winning case, it would have been a simple matter to use language that would have conveyed that meaning unambiguously, or at least with greater clarity. (Cf. *Travelers Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 244, 253 [187 Cal.Rptr. 838]; *People* v. *Brown* (1980) 110 Cal.App.3d 24, 39 [167 Cal.Rptr. 557].) For example, the statute might have required petitioner to demonstrate that it "is reasonably probable" that he or she will win on the conspiracy issue. No such language appears. Nor did the Legislature provide that the petition may be denied only if the petitioner is unlikely to ultimately prevail (Code Civ.

[5]Understandably, neither side challenges the right to a jury trial on a personal cause of action to commit fraud based on a conspiracy theory. The lawyers do challenge the right to jury trial in a derivative cause of action. We need not and do not address this issue because it is not necessary to the resolution of the appeal.

Proc., § 1094.5, subd. (h)(1)), or require a finding that the petitioner would ultimately win.

Instead, the Legislature used the words "reasonable probability," which speak to the relative likelihood of success. The full phrase, "a reasonable probability," connotes a substantial potential for success. The reasonable and literal meaning of this phrase in the context of the statute is that the petition must be granted if the proposed pleading is legally sufficient and the evidentiary showing to support it makes out a prima facie showing of conspiracy between the attorney and the client. It would strain the language to say that "a reasonable probability" has the same meaning as "reasonably probable" in this context.

Nevertheless, there is support for appellant's construction as well. The phrase "a reasonable probability," or phrases very much like it, have been used by courts in other contexts to describe the conclusion that a particular outcome is more likely than not to occur. In determining whether a preliminary injunction should issue, for example, the trial court considers whether there is "a reasonable probability that plaintiff will be successful in the assertion of his rights." (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889].) Reversible error exists where the court is of the opinion that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 300 [85 Cal.Rptr. 444, 466 P.2d 996] [applying *Watson* standard in civil actions].) The *Watson* court explained: "[T]he test, as stated in any of the several ways, must necessarily be based upon reasonable probabilities rather than upon mere possibilities; . . ." (46 Cal.2d at p. 837.)

We are left, then, with an ambiguous statute. We are required to resolve the ambiguity in a manner consistent with the constitutional right to jury trial, so long as that construction is tenable in light of the available statutory materials.

"Judicial doctrine governing construction of a law to avoid unconstitutionality is well settled. If 'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.' [Citations.] Consequently, '[i]f feasible within bounds set by their words and purposes, statutes should be construed to preserve their constitutionality.' [Citation.]" (*Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 186 [185 Cal.Rptr. 260, 649 P.2d 902].)

"This follows from the presumption that the legislative body intended to enact a valid statute, . . . [Citations.] The United States Supreme Court has explained that the rule in favor of a construction which upholds a statute's validity 'plainly must mean that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' [Citations.]" (*People* v. *Davenport* (1985) 41 Cal.3d 247, 264 [221 Cal.Rptr. 794, 710 P.2d 861]; see *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 371-373 [285 Cal.Rptr. 231, 815 P.2d 304].)

Our role in construing an ambiguous statute is limited, however. " ' "[T]his court cannot . . . in the exercise of its power to interpret, rewrite the statute. If this court were to insert in the statute all or any of the . . . qualifying provisions [required to render it constitutional], it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial function." ' [Citations.]" (*Metromedia, Inc.* v. *City of San Diego*, *supra*, 32 Cal.3d at p. 187.)

As we have discussed, the legislative purpose of section 1714.10 was to eliminate frivolous allegations that attorneys have conspired with their clients. This statutory purpose is served by a construction that requires a prefiling procedure to determine whether the proposed conspiracy pleading is legally sufficient, and whether it is supported by a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted by the petitioner is credited. If either of these requirements is not met, the petition must be denied; if both are satisfied, it must be granted. This is a determination of law, not of fact. (See *Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 353 [257 Cal.Rptr. 356].) So construed, the statute provides a vehicle to preclude frivolous allegations of conspiracy without subjecting the allegations to a fact adjudicative screen that would violate the jury clause.

It remains to consider whether the limited role of the trial court in reviewing a section 1714.10 petition passes constitutional muster under the jury clause. We conclude that it does.

The procedure under section 1714.10 is similar to the procedure employed in the determination of a motion for summary judgment, with a single material difference: under section 1714.10, the burden of proof is shifted to the plaintiff. In this way, the statutory requirement is similar to the showing required of plaintiff who responds to a motion for summary judgment under the Federal Rules of Civil Procedure. That procedure has been upheld

against challenges that it constitutes a violation of the federal right to jury trial secured by the Seventh Amendment.

Under federal law, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Anderson* v. *Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248 [91 L.Ed.2d 202, 211-212, 106 S.Ct. 2505]; see also *Celotex Corp.* v. *Catrett* (1986) 477 U.S. 317 [91 L.Ed.2d 265, 106 S.Ct. 2548]; *Matsushita Elec. Industrial Co.* v. *Zenith Radio* (1986) 475 U.S. 574 [89 L.Ed.2d 538, 106 S.Ct. 1348].) In *Anderson*, the Supreme Court concluded that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." (477 U.S. at p. 255 [91 L.Ed.2d at p. 216].) The court explained that "it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. [Citation.] If the evidence is merely colorable, [citation], or is not significantly probative, [citation], summary judgment may be granted." (477 U.S. at pp. 249-250 [91 L.Ed.2d at pp. 212-213].)

The *Anderson* court emphasized that this standard does not allow a trial court to assume functions traditionally reserved to the jury. "Our holding that the . . . standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions,not those of a judge, . . ." (477 U.S. at p. 255 [91 L.Ed.2d at p. 216].)

This federal procedure differs from the California procedure in that the defendant moving for summary judgment is not required to negate the nonmoving party's claim. (See *Biljac Associates* v. *First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1421-1422 [267 Cal.Rptr. 819]; compare *United Steelworkers of America* v. *Phelps Dodge* (9th Cir. 1989) 865 F.2d 1539, 1542-1543 with *Krieger* v. *Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 211-212 [285 Cal.Rptr. 717].) The federal procedure has withstood challenges that it violates the right to jury trial. In *Johnston* v. *IVAC Corp.* (Fed.Cir. 1989) 885 F.2d 1574, 1577, the court ruled that the grant of summary judgment is "in no sense a denial" of right to jury trial because it can lie only where there is no genuine issue of material fact. (See also *Leonard* v. *Dixie Well Service & Supply, Inc.* (5th Cir. 1987) 828 F.2d

291, 294 [district court erred in basing grant of summary judgment on finding that moving party's evidence was "inherently more 'reliable' or 'accurate'" than nonmoving parties' evidence]); *Etalook* v. *Exxon Pipeline Co.* (9th Cir. 1987) 831 F.2d 1440, 1446-1447 [summary judgment procedure did not infringe right to jury trial].)

The California Supreme Court recently considered a similar problem of statutory construction in reviewing Code of Civil Procedure section 396, the statute governing transfer of actions from the superior to a municipal or justice court. (See *Walker* v. *Superior Court, supra,* 53 Cal.3d 257.) Section 396 provides for transfer when it appears that "the action . . . will necessarily involve the determination of questions not within the jurisdiction of the court, . . ."

This language might have been taken to allow transfer of a case if it appeared unlikely that the plaintiff would recover over $25,000 in a superior court action. That was the interpretation urged upon the court by the respondent in *Walker.* Concerned about a violation of the jury clause were it to accept this construction, the *Walker* court rejected it, and concluded that section 396 does not permit the trial judge to determine the merits of the claim in violation of the right to jury trial. (53 Cal.3d at p. 269.)

The court pointed out that in federal courts, the absence of the minimum amount-in-controversy must be established to a "legal certainty" in order to protect against violation of the right to jury trial. (53 Cal.3d at p. 270.) "Professor Wright, in language especially appropriate to respondent's assertions regarding the appropriate standard in the present case, has expressed the point as follows: 'The court may believe it highly unlikely that plaintiff will recover the amount demanded, but this is not enough to defeat jurisdiction, unless it appears to a legal certainty that plaintiff cannot recover the amount which he has demanded.' [Citation.] In the same fashion that the federal courts' 'legal certainty' test guards against undue deprivation of the jury trial right, section 396's high standard—i.e., the requirement of a conclusion that resolution of the action will *necessarily* involve determination of questions outside the jurisdiction of the court—accomplishes the same protective purpose." (53 Cal.3d at p. 270.)

As we construe section 1714.10, the trial court may not make findings as to the existence of facts based on a weighing of competing declarations. Whether or not the evidence is in conflict, if the petitioner has presented a sufficient pleading and has presented evidence showing that a prima facie case will be established at trial, the trial court must grant the

petition. This test meets the high standard required under *Walker* to avoid infringement of the right to jury trial.[6]

Courts in other jurisdictions have been asked to review a variety of efforts at tort reform under claims that they violated the right to jury trial. We have reviewed a number of these decisions, and find none of them to be particularly instructive.

Thus, in *Johnson* v. *St. Vincent Hospital, Inc.* (1980) 273 Ind. 374 [404 N.E.2d 585, 602], the Supreme Court of Indiana upheld provisions of the Indiana Medical Malpractice Act which impose a $100,000 cap on damages available for each occurrence, reasoning that there was no violation of the right to jury trial because the Legislature has the authority to terminate a claim through a statute of limitation or by adopting a procedure requiring assertion of the right. In *Etheridge* v. *Medical Center Hospitals* (1989) 237 Va. 87 [376 S.E.2d 525, 529], the Virginia Supreme Court upheld a $750,000 damage cap in medical malpractice actions on the ground that the common law never recognized a right to full recovery in tort. In *Franklin* v. *Mazda Motor Corp.* (D. Md. 1989) 704 F.Supp. 1325, the district court rejected an argument that a statute limiting noneconomic damages in personal injury actions to $350,000 violates the right to jury trial. The *Franklin* court reasoned that such a limitation was no more violative of the right to jury trial than a statute completely eliminating a cause of action or repealing whole categories of recoverable damages under recognized torts. (*Id.* at p. 1333; see also cases collected in Wagner & Reiter, *Damage Caps in Medical Malpractice: Standards of Constitutional Review* (1987) 4 Detroit College of Law Rev. 1005, 1012-1016; Note: *Impact of Sofie* v. *Fibreboard Corp. on Constitutional Challenges to Oregon's Statutory Limit on Noneconomic Damages* (1989) 26 Willamette L.Rev. 197, 202-203.)

We decline to venture so far in analyzing the authority of the Legislature to enact procedures which may infringe on the right to jury trial. We are satisfied that section 1714.10 as we have construed it does not violate that right. It follows that appellant was bound to follow the procedures it prescribes before filing a complaint that included the conspiracy allegation to which the statute was addressed.

---

[6]We have not found, nor have counsel cited, any California case that discusses the right to jury trial under the somewhat analogous procedure requiring a party seeking punitive damages against a health care provider to obtain leave of court based upon a showing of a "substantial probability that the plaintiff will prevail on the claim . . . ." (Code Civ. Proc., § 425.13.) The legislative history reveals that section 1714.10 was patterned on this statute. We need not and do not address the validity of the statutory limitation on punitive damages. (See *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court (Hull)* (1992 ) 3 Cal.4th 181, 185, fn. 2 [10 Cal.Rptr.2d 208, 832 P.2d 924] jury trial issue under § 425.13 noted but not decided].)

As we discussed, after his section 1714.10 petition was denied, appellant proceeded to file a lawsuit alleging a "concert of action" between the lawyers and their client. In the unpublished portion of this opinion, we point out that, even with its revised phrasing, the complaint alleged a lawyer-client conspiracy within the purview of section 1714.10. Appellant's remedy, if he believed the trial court had improperly denied his petition, was to appeal the order of denial. (Code Civ. Proc., § 904.1; see *Gurrola* v. *County of Los Angeles* (1984) 153 Cal.App.3d 145, 150 [200 Cal.Rptr. 157] [late claim petition].)

Appellant claims that he has done so through his notice of appeal in the instant proceeding, and he argues the merits of the section 1714.10 ruling. As we next explain, we may not reach the merits of that ruling because appellant failed to preserve his right to appeal the order denying his section 1714.10 petition.

## II

### *Denial of the 1714.10 Petition*

Appellant challenges the propriety of the trial court order denying his section 1714.10 petition. That order arose out of a separate proceeding, and we have no jurisdiction to review it.

As we have discussed, the petition procedure created by section 1714.10 is a special proceeding, and the adjudication of such a petition is a final, appealable order.

The trial court's order denying the 1714.10 petition is dated October 6, 1989. Notice of ruling was given on October 9, 1989. Appellant's notice of appeal from this order was not filed until November 8, 1990, well beyond the 60 days allowed by California Rules of Court, rule 2(a).[7]

---

[7]At oral argument, appellant claimed that he was misled by the language of our order denying his petition for writ of mandate, which he filed after the trial court order denied his section 1714.10 petition. Appellant cites the same language in a supplemental reply brief, filed with permission of the court, to support an argument that the order is reviewable on this appeal. In pertinent part the order read: "The petition for writ of mandate . . . is denied for absence of facts showing entitlement to extraordinary relief. [Citation.] Petitioner has causes of action pending against attorney Grant on independent tort theories. It appears that petitioner has an adequate remedy by post-judgment appeal. . . ." As we have discussed, the proper course was an appeal from the order denying the petition under section 1714.10. Reference to a "post-judgment appeal" was therefore erroneous. This order, however, was not made until well after the time for appeal had expired. Appellant had 60 days from notice of the ruling denying his section 1714.10 petition within which to file his notice of appeal. (Cal.

## III-V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment of dismissal is affirmed. The parties on appeal from the judgment of dismissal are to bear their own costs on appeal. The order imposing sanctions on counsel for appellant is reversed. Appellant Sharp is to have his costs on appeal of the sanctions order only.

Woods (A. M.), P. J., and Stephens, J.,† concurred.

---

Rules of Court, rule 2(a).) The time within which he could file a proper notice of appeal from the trial court order expired on December 8, 1990, 60 days after notice of the ruling. The petition for writ of mandate was filed only four days before the expiration of this period. Appellant did not seek a stay in his petition for writ of mandate, and he erroneously stated that he "may not presently appeal Respondent Court's ruling." Therefore, the error in our order, which was filed well after the expiration of the time for appeal, could not have affected the timeliness of a review of the merits of the section 1714.10 order.

*See footnote, *ante*, page 908.

†Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.