[Nos. D020760, D020711. Fourth Dist., Div. One. July 1, 1994.]

MAGDALENA BURTSCHER, Plaintiff and Respondent, v. PAUL BURTSCHER et al., Defendants and Appellants.

722

**COUNSEL**

Lewis, D'Amato, Brisbois & Bisgaard, Douglas R. Reynolds and James E. Friedhofer for Defendants and Appellants.

Hagar & Cotten and Cary L. Cotten for Plaintiff and Respondent.

OPINION

**TODD, Acting P. J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

Paul Burtscher and his wife, Magdalena, entered into a written agreement which, among other things, gave Magdalena "unrestricted use of [the] home located at 2190 [Alessandro] Trail, Vista, California, for a period of 5 years" effective January 8, 1992. Magdalena started living in the home in January 1992, and she and Paul were divorced in Austria six months later. Magdalena was still living in the home in June 1993 when she left temporarily to attend a court hearing on spousal support in Austria.

Duckor & Spradling Attorney Linda Hobbs (Hobbs) represented Paul on the interspousal transfer of the Vista home from Magdalena to Paul and negotiations to lease the home from Paul to Magdalena. Hobbs also represented PBi AG International, a corporation formed by Paul and new wife, Nadja.

Between October 1992 and May 1993 Hobbs called, sent letters and faxed documents to Magdalena at the Vista home. On June 11, 1993, Hobbs had the quitclaim deed recorded transferring the home from Paul to the corporation owned by Paul and his new wife Nadja.[1]

On June 21, 1993, Magdalena left for the support hearing in Austria. On June 29, while Magdalena was in Europe, Nadja flew from Liechtenstein to San Diego to retake possession of the home. Attorney Hobbs went to the home with Nadja and a locksmith the same day.

Encountering a guest of Magdalena's living at the home who refused them entry, Hobbs called a deputy sheriff (Hobbs's cousin) and warned the guest she would give him a chance to leave before the deputy arrived. Meanwhile, the locksmith opened the home. When Hobbs's cousin, the deputy, got there he gave the guest two hours to pack up his things and go, explaining Nadja had a deed and, if the guest refused to leave, Hobbs could have him arrested for trespass.

The guest vacated the premises, the locks were changed, and Magdalena's belongings were put in storage with the name "Linda Hobber" and Hobbs's phone number listed on the storage agreement. The home was locked and

---

[1] Nadja is the director and sole signatory of PBi AG International. She too refers to Hobbs as her attorney.

guarded, and Magdalena was refused entry and/or possession of her clothes, documents, jewelry, paintings, a 1979 Porsche and other personal property in the home.[2]

Two weeks later, on July 15, 1993, Magdalena sued Paul, Nadja and their corporation for ejectment, injunction, conversion, trespass, invasion of privacy, breach of contract, bad faith denial of existence of contract and conspiracy, and requested a temporary restraining order to regain possession of the home and her personal belongings. The court granted the temporary restraining order finding Magdalena in possession of the property under color of right.[3] In September 1993, Magdalena also obtained an injunction from the Austrian court prohibiting Paul from attempting to take possession of the home.[4]

In December 1993, Magdalena filed a motion for leave to amend the complaint to add a cause of action for civil conspiracy against attorney Hobbs. The motion was granted, and Magdalena added Hobbs and Duckor & Spradling as coconspirators.

Paul, Nadja, the corporation, Hobbs and Duckor & Spradling[5] appealed from the order allowing plaintiff to add the conspiracy cause of action, and filed a companion petition for writ of supersedeas. We in turn stayed proceedings in the trial court and expedited the appeal.

DISCUSSION

Civil Code section 1714.10[6] governs civil conspiracies between attorney and client. It provides in pertinent part:

"(a) No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the

---

[2]Hobbs later released to Magdalena's brothers the stock certificates that had been removed from the home.

[3]Defendants thereafter stipulated to the entry of a preliminary injunction.

[4]Paul has apparently appealed the Austrian injunction.

[5]Duckor & Spradling has been the attorney of record from the inception of the action. About a month after the motion to amend was granted, Lewis, D'Amato, Brisbois & Bisgaard associated into the case on behalf of Paul, Nadja, the corporation, Hobbs and Duckor & Spradling. Duckor & Spradling, while presently a named defendant, is, however, still attorney of record.

[6]All statutory references are to the Civil Code unless otherwise specified.

party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. The court shall . . . permit [the party against whom the action is proposed to be filed] to submit opposing affidavits prior to making its determination. The filing of the petition, proposed pleading, and accompanying affidavits shall toll the running of any applicable statute of limitations until the final determination of the matter, which ruling, if favorable to the petitioning party, shall permit the proposed pleading to be filed.

"(b)  Failure to obtain a court order where required by subdivision (a) shall be a defense to any action for civil conspiracy filed in violation thereof. The defense shall be raised by the party charged with civil conspiracy upon that party's first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate. Failure to timely raise the defense shall constitute a waiver thereof."

Defendants mount a variety of substantive and procedural challenges to the order permitting Magdalena to plead a cause of action for attorney-client conspiracy. They argue "reasonable probability" under section 1714.10 requires something more than a prima facie showing: the court must also determine the evidence shows plaintiff will "more likely than not" prevail on the claim. Assuming a prima facie showing is sufficient, however, defendants still urge us to reverse, arguing the court improperly applied a demurrer standard in deciding the motion and Magdalena failed to establish a prima facie case.

On the procedural side, defendants contend the motion to add Hobbs and Duckor & Spradling as coconspirators should have been denied because: (1) Magdalena failed to file a verified petition, (2) she waived her right to sue them, and (3) she did not comply with section 1714.10 before adding the law firm as a defendant.

I

■  To start, we reject defendants' contention that establishing a "reasonable probability" under the statute goes beyond a prima facie case. As defendants themselves concede, the "seminal" case, *Hung* v. *Wang* (1992) 8 Cal.App.4th 908 [11 Cal.Rptr.2d 113], interprets "reasonable probability" under section 1714.10 to mean only a prima facie showing. In the court's words: "As we construe section 1714.10, the trial court may not make findings as to the existence of facts based on a weighing of competing

declarations. Whether or not the evidence is in conflict, if the petitioner has presented a sufficient pleading and has presented evidence showing that a prima facie case will be established at trial, the trial court must grant the petition." (*Hung* v. *Wang, supra,* 8 Cal.App.4th at pp. 933-934.) In *Aquino* v. *Superior Court* (1994) 21 Cal.App.4th 847 [26 Cal.Rptr.2d 477], we adopted the same approach in interpreting "substantial probability" under Code of Civil Procedure section 425.13 to require only a prima facie showing of plaintiff's entitlement to punitive damages. (*Id.* at pp. 854-856.)

In making such prepleading determinations, the trial court is not weighing conflicting evidence, determining credibility or drawing inferences. It is performing a "gatekeeping" function, filtering out frivolous allegations of conspiracy but without subjecting them to the "fact adjudicative screen" that would violate the right to a jury trial. (*Aquino* v. *Superior Court, supra,* 21 Cal.App.4th at p. 856; *Hung* v. *Wang, supra,* 8 Cal.App.4th at p. 931.) We see no reason to depart from the standard in *Hung* or revisit our reasoning in *Aquino.*

Nor do we accept defendants' contention, based as it is on the offhand reference to "allegations" in this "demurrer like" proceeding, that the trial court evaluated the evidence using the wrong standard.

■ Finally, we reject defendants' assertion that Magdalena did not make out a prima facie case. The argument that Magdalena's declarations failed to provide evidentiary support for Hobbs's role in the affair cannot be taken seriously when Nadja herself declared the purpose of visiting the home was to retake possession, and Hobbs admitted going to the home with Nadja and being present throughout the encounter with the guest, sheriff and locksmith. Moreover, at the argument in the trial court, defense counsel conceded Hobbs was the one who made all the contacts: "[Hobbs] acted as an attorney. She called a locksmith. She called the storage company. She accompanied her non-English speaking client on a trip to the property. She called the sheriff's department. These are all things attorneys do." In short (and putting aside for the moment the conclusion that these are things lawyers normally do), it is the admissions and concessions of defendants and their counsel which establish the prima facie case.

Second, contrary to defendants', the ouster of Magdalena's guest also counts toward the prima facie showing even if he is not a party to the action. Hobbs overcame the guest's refusal to allow them to enter by calling "somebody . . . she knew who worked for the sheriff's department" as counsel conceded at argument, her cousin. Getting the guest to vacate removed one of the last obstacles to entry. It was an overt act facilitating the

dispossession (changing the locks, removing personal items and the like) for purposes of a conspiracy. There is no question that Hobbs directly participated. (See *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785 [157 Cal.Rptr. 392, 598 P.2d 45].)

Finally, to the extent defendants argue Hobbs's acts are consistent with the normal services of an attorney, we disagree. This case arose out of a dispute over possession of a home given by contract to Magdalena for her "unrestricted use" from January 1992 to January 1997. As mentioned previously, the evidence and concessions before the trial court showed, among other things, that in June 1993: Hobbs went to the home with the new wife who intended to take possession, Hobbs called the locksmith who opened the home while Hobbs waited for the deputy sheriff, Hobbs called her cousin, the deputy, who warned the guest Hobbs could have him arrested for trespass if he did not leave, and Hobbs contacted the storage company and had Magdalena's belongings taken away.

We can perceive of situations where it may be difficult to distinguish between when a lawyer is representing a client and when he or she is an integral part of a conspiracy to defraud a third person, but that is not our case. In our case, attorney Hobbs resorted to self-help (with a little help from her cousin) in going onto the property and unilaterally retaking possession in circumstances where a lawyer would be serving a notice to quit, filing an unlawful detainer action and getting a court order. Hobbs actively participated in conduct that went way beyond the role of legal representative: self-help is not the practice of law. The facts establish a prima facie case.

## II

We are equally unmoved by defendants' procedural arguments. First, although the statute uses the term "verified petition," we note Magdalena verified the complaint and the amended complaint and filed declarations under penalty of perjury in support of the motion. Verified complaints and sworn declarations have the same effect as a verified petition in tending to discourage frivolous allegations by requiring the claimants to put their assertions under oath. No purpose would be served in reversing the order for Magdalena's failure to verify the petition when the papers are otherwise in substantial compliance, another verification would accomplish nothing, and Magdalena could always remedy the defect by refiling her motion.

■ Second, the only case cited by defendants to support the argument plaintiff waived her right to sue for civil conspiracy is *Villa Pacific Building Co.* v. *Superior Court* (1991) 233 Cal.App.3d 8 [284 Cal.Rptr. 227]. *Villa Pacific* holds that a lawyer/coconspirator waives his right to assert the defense that a civil conspiracy claim was filed without leave of court unless he objects at his first appearance. (*Id.* at p. 12.) The case has no application here. There are no statutory time limits on a plaintiff filing a motion to add an attorney-client civil conspiracy cause of action.[7] Further, where as here Magdalena made the motion to name Hobbs within five months of filing the complaint, there is no clear showing of laches.

Finally, the argument that Magdalena failed to seek leave of court before adding the Duckor & Spradling firm as a defendant is not properly before us.[8] As the statute indicates, lawyers named as coconspirators without a court order must raise the defense on their "first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate." ( 1714.10, subd. (b).) Until Duckor & Spradling files such a motion and the trial court rules on it, the issue is premature.

### DISPOSITION

The order granting plaintiff leave to amend the complaint to add Linda Hobbs as a coconspirator is affirmed. The stay of March 30, 1994, issued in No. D020711, will be vacated when the opinion is final as to this court. Respondent to recover costs on appeal.

Benke, J., and Nares, J., concurred.

.

---

[7]Although the February 18, 1988, version of Senate Bill No. 2337 required plaintiff to file a motion to add a claim for attorney-client civil conspiracy within two years of filing the complaint or initial pleading and more than nine months before trial, the bill was amended in May 11, 1988, to delete any time limitations on filing the motion.

[8]Failure to obtain leave of court before filing a claim for attorney-client civil conspiracy is not a jurisdictional defect. (*Villa Pacific Building Co.* v. *Superior Court, supra,* 233 Cal.App.3d at p. 9.)