**DI'S, INC., a Delaware corporation, Defendant Below–Appellant,**

v.

**Clarence W. McKINNEY, Sr., Plaintiff Below–Appellee.**

**No. 70, 1995.**

Supreme Court of Delaware.

Submitted: Dec. 7, 1995.
Decided: April 16, 1996.

George F. Gardner, III of Parkowski, Noble & Guerke, P.A., Dover, for Appellant.

Mark F. Dunkle of Prickett, Jones, Elliott, Kristol & Schnee, Dover, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

BERGER, Justice: For the majority,

This is an appeal from a decision of the Superior Court overturning a decision of the Kent County Board of Adjustment (the "Board") interpreting Article 9, Section 14.6 of the Kent County Zoning Ordinance. Appellant, Di's, Inc. ("Di's"), persuaded the Board that a retail shopping center is a permitted accessory use for a manufactured home park. Appellee, Clarence W. McKinney, Sr. ("McKinney"), appealed the Board's decision and the Superior Court reversed. In this appeal, Di's argues that the Board's decision should be reinstated because: (i) McKinney did not perfect a timely appeal; (ii) McKinney lacks standing to contest the Board's decision; and (iii) the Superior Court erred in construing the relevant zoning ordinance.

We hold that the Superior Court correctly applied the facts and the law. McKinney has standing as an adjoining landowner and his Petition for Review, although unverified, was sufficient to invoke the jurisdiction of the Superior Court. The Superior Court acted within its discretion in permitting McKinney to amend his Petition, by verifying it, after the statutory appeal period had run and in issuing a second writ of certiorari. On the merits, we conclude that the Superior Court correctly interpreted Section 14.6 of the Kent County Zoning Ordinance and that the record evidence did not support the Board's conclusion.

## I. FACTUAL BACKGROUND

The property in question consists of approximately 71 acres bordering U.S. Route 13 just north of Dover, Delaware. The property, known as Kentwood Estates Mobile Home Park ("Kentwood"), was developed in the 1960s, before zoning ordinances were enacted in Kent County. Kentwood later was zoned "Residential Manufactured Home" or "RMH." However, since Kentwood did not meet all of the requirements of an RMH classification, it was grandfathered as a permissible non-conforming use.[1]

After Di's acquired Kentwood, it sought authorization for commercial development of

---

1. At some time prior to the present proceedings, a small strip of the Kentwood parcel bordering on U.S. Route 13 was rezoned as "General Business" or "B–G." This zoning classification allows the type of retail shopping center Di's proposed. However, the Kentwood property has not been subdivided and only one principal use is allowed for each lot. Since the principal use is a mobile home park, the entire parcel has been treated as if all of it were zoned RMH.

a portion of the parcel adjoining U.S. Route 13. In August 1993, Di's applied for an expansion of its existing non-conforming use and a series of variances. That application was denied by the Kent County Department of Planning on October 21, 1993. On November 1, 1993, Di's filed a new application, seeking a determination that "a convenience store with gas pumps, a video store, a pizza or sub shop, an insurance office, and hardware store are ... uses or structures customarily incidental to the operation of a manufactured home park." At the hearing on Di's application, evidence was presented that numerous other mobile home parks in lower Delaware adjoin gas stations, convenience stores and other small retail establishments. In its one-paragraph decision, the Board ruled in Di's favor, stating that, "As long as the property is zoned B-G (General Business), a convenience store with gas pumps and all of the stores requested by the applicant go hand in hand with a development or subdivision."

## II. PROCEEDINGS ON APPEAL

On January 14, 1994, 29 days after the Board's decision, McKinney filed an unverified Petition for Review in the Superior Court. The Prothonotary issued a writ of certiorari and the Board forwarded its record to the court. On February 28, 1994, Di's answered the Petition for Review. Two of the affirmative defenses in Di's answer sought dismissal because (i) the Petition was not verified and (ii) the writ of certiorari was issued by the Prothonotary, rather than the court.

McKinney did nothing to address these two defects until September 29, 1994, when he moved to amend the Petition to include the verification, and presented the court with an order for it to sign issuing the writ of certiorari. By that time, the Board had already provided its record pursuant to the original writ of certiorari executed by the Prothonotary. In addition, the parties had engaged in discovery and completed briefing on the Petition for Review. Nonetheless, on October 3, 1994, the Superior Court issued another writ of certiorari. McKinney's mo-

tion to amend was granted in the course of Superior Court's decision on the merits.

## III. STANDING

■ Di's argues that McKinney is not an aggrieved party entitled to challenge the Board's decision. Di's acknowledges that McKinney is an adjoining landowner. Nonetheless, it argues that McKinney's only interest in Di's application is economic. McKinney operates a convenience store on his neighboring property and there is evidence to suggest that McKinney is concerned about the competition from Di's proposed shopping center, which would include a convenience store. Di's relies upon authorities from other jurisdictions for the proposition that zoning regulations were not designed to protect citizens from competition and that a party who opposes a zoning application on that ground alone is not "aggrieved" within the meaning of 9 *Del.C.* § 4918.

We find this argument to be without merit. At the Board hearing, McKinney's family expressed concerns about traffic patterns and the adverse impact Di's convenience store would have on the entire neighborhood. Thus, the contention that McKinney was motivated solely by economic interests is not well founded. McKinney is an adjoining landowner who contends that the proposed shopping center will be detrimental to the neighborhood. As such, McKinney has standing to object to the Board's decision, which has the effect of expanding an existing non-conforming use. *See Tate v. Miles,* Del. Supr., 503 A.2d 187 (1986) (owners of property 1500 feet from the rezoned land have standing where they claim that the rezoning will increase traffic and adversely affect natural resources).

## IV. JURISDICTION

Di's raises two jurisdictional issues, both related to the lack of full compliance with the terms of the governing statute, 9 *Del.C.* § 4918. That statute provides, in relevant part:

(a) Any persons jointly or severally aggrieved by any decision of the Board of Adjustment ... may present to the Supe-

rior Court in and for Kent County a petition duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. The petition shall be presented to the Court within 30 days after the filing of the decision in the office of the Board.

(b) Upon presentation of the petition, the Court may allow a writ of certiorari, directed to the Board of Adjustment, to review the decision of the Board of Adjustment, and shall prescribe therein the time within which a return thereto must be made and served upon the petitioner's attorney, which shall not be less than 10 days and may be extended by the Court. 9 *Del.C.* § 4918.

McKinney filed a petition within 30 days after the filing of the Board's decision, alleging that the Board's decision was illegal, and stating the grounds of the purported illegality. However, the petition was not "duly verified" and McKinney did not submit a verification to the Court until well after the 30–day time limit had expired. In addition, the writ of certiorari attached to McKinney's petition called for a signature by the Prothonotary, rather than a court order and the writ, in fact, was issued by the Prothonotary. McKinney did nothing to correct this mistake, either, for approximately eight months. Both deficiencies ultimately were corrected. The question thus presented is whether the Superior Court may acquire jurisdiction of an appeal under Section 4918 before the appellant has fully complied with the statute. If so, we must determine whether the court acted within its discretion in allowing McKinney to cure his defective filing eight months after the appeal was commenced.

■ In considering the effect of McKinney's failure to verify his Petition for Review, we note first that the § 4918 petition is the functional equivalent of a notice of appeal. *Chadwick v. Janaman*, Del.Supr., 349 A.2d 742, 743 (1975). The writ of certiorari, similarly, takes the place of a citation issued by the Prothonotary pursuant to Superior Court Civil Rule 72(e). "Certiorari to the Superior Court is, in effect, an appeal, differing only by being confined to the record and requiring a mere ministerial act on the part of a judge

in ordering issuance of the writ." *Chadwick v. Janaman*, 349 A.2d at 743. Thus, it is appropriate to compare the lack of verification to other defective notices of appeal in deciding whether McKinney's defective filing was sufficient to invoke the jurisdiction of the Superior Court.

■ More than 30 years ago this Court adopted the "modern view" that, where possible and where there is no prejudice, appeals should not be dismissed on technicalities. In *Episcopo v. Minch*, Del.Supr., 203 A.2d 273, 275 (1964), this Court denied a motion to dismiss an appeal where the notice of appeal failed to identify the date or the nature of the order appealed from. This Court ruled that appeals should be "decided on the merits and not upon nice technicalities of practice."

In *State Personnel Commission v. Howard*, Del.Supr., 420 A.2d 135 (1980), this Court again endorsed a policy favoring substantive review. In *Howard*, appellant failed to join two of the original plaintiffs in its appeal. The *Howard* Court adopted guidelines to decide whether omissions in a notice of appeal are fatal: to avoid dismissal, the appellant must establish the absence of substantial prejudice to a party in interest. In reaching its conclusion that the motion to dismiss should be denied, the *Howard* Court noted that, "[t]his is not a case in which this Court lacks jurisdiction because the appellant failed to file any notice of appeal within the 30 day statutory period [citation omitted]. On the contrary, the appellant has met the jurisdictional requirement imposed by § 148 by filing a notice of appeal within the prescribed period." *Id.* at 138.

More recently, in *Weston v. State*, Del. Supr., 554 A.2d 1119 (1989), appellant moved to amend his notice of appeal to correctly identify the order from which the appeal was taken. The *Weston* Court began its analysis by determining that appellant had filed his initial notice of appeal within the 30–day statutory period. Based upon that finding, the Court concluded that there was no jurisdictional bar to prevent an amendment of appellant's notice of appeal. Applying the *Howard* test, this Court held that no party

was substantially prejudiced and that the amendment should be permitted, as it was a "minor, technical one." *Id.* at 1122.

If McKinney's Petition for Review is treated as a notice of appeal, it is clear that the lack of verification at the time of filing is not a jurisdictional bar. The Petition was filed within the 30–day statutory period; Di's acknowledges that it suffered no prejudice from the lack of verification; and the omission was a minor, technical one. Assuming one of the purposes of the statute was to assure that petitions for review were supported by the sanctity of the oath and that this policy was designed to deter petitions which are not serious or are frivolous, the policy was ultimately satisfied when the oath was provided. Thus, under *Howard,* it is within the Superior Court's discretion to allow an amendment to the Petition to cure the defective filing. We conclude that this approach gives full effect to both the literal terms of § 4918 and the strong policy in favor of review on the merits.

In reaching this conclusion, we are not unmindful of the fact that § 4918 governs appeals in a specialized area—zoning and land use—and that this statute includes requirements and procedures not generally found in other statutes granting the right to appeal. However, we find nothing in the language of the statute to suggest that jurisdictional questions arising from a defective § 4918 filing should be treated any differently than jurisdictional questions arising from a defective notice of appeal. Several other jurisdictions have reached the same conclusion. In *Drury Displays, Inc. v. Board of Adjustment,* Mo.Supr., 760 S.W.2d 112 (1988), appellant filed a timely, but unverified, petition to review a Board of Adjustment's decision. In analyzing the operative Missouri statute, Section 89.110, RSMo 1986, which is virtually identical to § 4918, the Missouri Supreme Court held:

> The purpose of the thirty-day requirement is to give the Board of Adjustment timely notice of the litigation, and "a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice the statutes of limitation are intended to afford." [citation omitted]

Further, the verification requirement is designed to "assure the truth of the pleading." [citation omitted] Allowing a petition to be verified by amendment does no violence to either of those objectives. Our holding does not permit the filing of false claims, because "[t]he verification of a complaint, as well as the complaint itself, speaks as of the time the action was commenced by filing the complaint. It is sufficient if was then true." [citation omitted] Nor can it be said that the Board of Adjustment was deprived of timely notice of the litigation when the original petition, filed within thirty days of the Board's decision, contains all the petitioner's substantive allegations. The amended petition in this case is identical in all respects to the original, with the exception of the addition of a verification clause, and fully apprised the Board of the litigation. *Id.* at 114.

*See Danish Book World, Inc. v. Board of Adjustment,* Iowa App., 447 N.W.2d 558 (1989) (unverified petition filed within 30 days substantially complied with statute the same as Delaware's); *Zbar v. Clarke,* Fla. D.C.App., 278 So.2d 292 (1973) (same). *See also State ex rel. Sweet v. Village of Jemez Springs, Inc. City Council,* 114 N.M. 297, 837 P.2d 1380 (App.1992) (statute similar to Delaware's does not preclude addition of necessary parties to an appeal after the expiration of 30 days).

■ The second defect in McKinney's appeal is the fact that the writ of certiorari initially was issued by the Prothonotary. This Court considered a jurisdictional challenge based upon the improper issuance of a writ of certiorari in *Chadwick v. Janaman, supra.* There it was noted that judicial action is required before the writ is issued. However, the aggrieved party need not obtain judicial action within 30 days. All that is required is that the petition for review be filed with the Prothonotary in a timely fashion. That was done. Thus, we find no jurisdictional bar based upon the original issuance of the writ of certiorari.

As to both defects, however, the question remains whether the Superior Court abused its discretion in allowing them to be cured approximately eight months after the petition

was filed. We find no abuse of discretion. Although McKinney offers no excuse for the delay, the record supports the Superior Court's conclusion that Di's suffered no prejudice from the delay and that the amendment to the pleading in no way changed the nature of the appeal. The issuance of the second writ of certiorari was but a technical formality, as the original writ had already accomplished its purpose. The Superior Court's decision to issue the writ was consistent with our policy of avoiding technical impediments to judicial review.

## V. THE BOARD'S INTERPRETATION

Section 14.6 of the Kent County Zoning Ordinance provides, in relevant part:

14.6 Accessory Structures and Uses

Within a manufactured home park the following accessory structures are permitted:

1. Management office
2. Community building and facilities
3. Recreational facilities
4. Coin-operated laundry facilities
5. Other uses and structures customarily incidental to operation of a manufactured home park
6. Manufactured home sales, provided:
   a. The sales area should not exceed ten percent (10%) of the total area of the park or two (2) acres, whichever is smaller . . .

The Board determined that a shopping center containing a convenience store with gas pumps, a video store, a pizza shop, an insurance office, and a hardware store qualifies under Subsection (5) as "other uses and structures customarily incidental to operation of a manufactured home park." The Board did not explain its reasoning or indicate how the evidence presented supported its legal conclusion. All that can be said from the record before us is that the Board heard evidence to the effect that several mobile home parks are adjacent to convenience stores, gas stations and other small retail establishments.

■■■ The Superior Court's interpretation of the zoning ordinance is a question of law, which we review *de novo*. *State v. Cephas,*

Del.Supr., 637 A.2d 20, 23 (1994). "In the construction of a statute, this Court has established as its standard the search for legislative intent. Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls." *Spielberg v. State,* Del.Supr., 558 A.2d 291, 293 (1989) (citation omitted). The ordinance identifies five permitted accessory uses, all of which directly support the operation of a manufactured home park. The "catch-all" Subsection (5) allows other uses that are "customarily incidental" to the operation of the mobile home park. By its terms, this subsection requires that the unnamed use or structure meet three requirements—it must be customary, incidental, and it must relate to the operation of the mobile home park. Stated another way, the accessory use must be one habitually associated with and subordinate to the functioning of a mobile home park. Random House Unabridged Dictionary, Second Edition, pp. 494, 966 and 1357. *See Wiggin v. Mummert,* Del.Ch., C.A. No. 8556, Hartnett, V.C., 1992 WL 113455 (May 26, 1992).

■■■ Having interpreted the zoning ordinance, we now must review the record to determine whether there was substantial evidence to support the Board's conclusion. *Cooch's Bridge Civic Ass'n. v. Pencader Corp.,* Del.Supr., 254 A.2d 608 (1969). The record before us does not meet this standard. The Board heard evidence that several mobile home parks adjoin convenience stores and gas stations. There was also testimony suggesting that Di's shopping center would be convenient for those Kentwood residents who do not wish to drive. This evidence does not establish that shopping centers habitually are located in mobile home parks or that they in some way support the functions or operations of the park. Accordingly, the Board's conclusion that a shopping center is a permitted accessory use for a mobile home park was unsupported and was properly reversed by the Superior Court.

## VI. CONCLUSION

Based upon the foregoing, we AFFIRM the decision of the Superior Court.

WALSH, Justice, with whom HOLLAND, Justice, joins, dissenting:

The majority holds that an unverified petition for certiorari, which was not amended to cure the deficiency until more than eight months later, is a "minor, technical" defect which did not affect the jurisdiction of the Superior Court to review a decision of the Kent County Board of Adjustment. Because I believe that complete compliance with the statutory mandate in question, unlike a rule of court, was required to properly invoke the Superior Court's jurisdiction, I respectfully dissent.

Although, the majority opinion recites the essential chronology which gave rise to this appeal, a full recitation of the pertinent facts is helpful to an understanding of the jurisdictional issue.

On January 14, 1994, appellee McKinney filed a Notice of Appeal with the Kent County Superior Court. This filing consisted of two documents: one entitled "praecipe" and directed to the Prothonotary; and a second entitled "Petition for Review of Decision of the Kent County Board of Adjustment (Notice of Appeal)." Neither document was verified, either within the document itself or by attached affidavit. The Petition for Review requested the court to issue a writ of certiorari to the Board. On January 19, 1994, the Prothonotary, not the court, signed and issued a writ of certiorari.

Di's filed an answer to the petition on February 28, 1994, three weeks after the Board (not a party to this appeal) filed its own answer. Di's presented a number of "affirmative defenses" in its answer, two of which are relevant to this appeal. The first is that the petition should be dismissed because it was not verified. The second defense is that the petition should be dismissed

because it was issued by the Prothonotary and not the court.

McKinney's counsel wrote the court on September 29, 1994, some eight months after the petition was filed and the writ of certiorari issued, and after briefing on the merits and the jurisdictional defenses had been completed. McKinney's correspondence to the court included a motion to amend his original petition by adding an enclosed affidavit of verification. The letter also included a proposed order for the court, which sought to "meet[ ] the objections of defendant, regarding the jurisdiction of this Court over this appeal...." The proposed "Order on Writ of Certiorari" was to be executed by the court, not the Prothonotary.

On October 7, 1994, Di's counsel wrote the court in response to McKinney's letter and objected that the proposed order did not meet the jurisdictional objections, and requested that the court "not take any action" so that Di's might preserve the issue and argue it on motions day. That letter was returned with a handwritten notation, dated October 11, 1994, by the Superior Court judge that "[o]bjection may be argued during briefing." However, no further briefing was allowed, and no oral argument held. In fact, the proposed Order on Writ of Certiorari already had been signed and entered by the Superior Court on October 3, 1994.

In a Memorandum Opinion and Order of February 13, 1995, the Superior Court reversed the decision of the Board and ruled for McKinney. Although the reversal was based on the merits of the case, the jurisdictional questions were addressed at the outset. The court allowed McKinney's motion to amend, citing Superior Court Civil Rule 15(a), and deemed the original petition amended to reflect verification.[2] The court also held that because the court had issued

---

2. The Superior Court's announced basis for permitting the amendment to add the verification was Superior Court Civil Rule 15(a) which imparts liberality in the amendment of pleadings. The majority does not adopt that rationale, nor does it reject it. It is important to note, however, that Rule 15(a) standing alone does not cure the problem. Rule 15(c) governing relation back of amendments must be applied. It is questionable if the certiorari petition could be deemed a

pleading and, if so, whether it could cure a jurisdictional defect in the appellate process once the time has expired. The amendment in question contains nothing more than a one-sentence affidavit attesting to the veracity of the original petition. It contains no "claim or defense," within the meaning of Rule 15(c)(2), and makes no attempt to otherwise alter the substance of the original petition.

an order for certiorari on October 3, 1994, jurisdiction was proper.

In my view, the majority misapprehends the jurisdictional nature of the writ of certiorari in administrative appeals. At common law, certiorari was deemed an extraordinary remedy, but in modern use, and in Delaware, it has become the functional equivalent of a writ of error when issued by the Superior Court to review decisions of inferior courts or legal tribunals, including administrative bodies. 1 *Woolley on Delaware Practice* § 896 (1906). The issuance of a writ of certiorari came to be viewed as a matter of right, and, at common law, there was no requirement that the petition for the issuance of the writ be verified. *Id.* § 903. Modernly, however, the common law practice has been expressly modified by legislative action. Section 4918(a) of Title 9 of the Delaware Code contains a specific provision that requires the "grounds of the illegality" be "duly verified." This provision is an integral part of the petition which must be "presented to the Court within 30 days" of the Board's decision. It is a legislative direction which the court cannot modify through its rule-making power.

The principle that the statutory requirement of affidavits cannot be altered by judicial decision or rule-making finds support in the Delaware jurisprudence dealing with mechanics liens. The mechanics lien statute, 25 *Del.C.* ch. 27, contains several provisions which specify the need for affidavits.[3]

The purposes of these affidavits are "to insure speedy litigation by requiring a sworn statement that there is a just and legal defense to an action," *Silverside Home Mart v. Hall*, Del.Super., 345 A.2d 427, 428 (1975), as well as to guard "against fraud and perjury."

*Oscar George, Inc. v. Potts*, Del.Supr., 115 A.2d 479, 481 (1955).

In addition to adhering strictly to the technical requirements of the mechanics' lien statute, courts are reluctant to allow amendment to cure these technical deficiencies. *E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.*, Del.Super., 229 A.2d 499, 502 (1967). The *E.K. Geyser* court noted:

> Ordinarily an amendment to a pleading is permitted under liberal construction of Rule 15.... The possibility of such construction being applied here is impeded by the fact that we are dealing with restrictive statutory rights under the mechanics' lien laws....
>
> [T]he mechanics' lien law [is] in derogation of the common law and thus to be construed rather strictly.... [T]he Court cannot act under its own Rule to alter a practice prescribed by statute....
>
> The Courts in this jurisdiction have had a number of occasions to consider attempts to amend affidavits of defense in mechanics' lien actions. Uniform[ly] such holdings have amounted to denials of such applications. *E.J. Hollingsworth Co. v. Continental–Diamond Fiber Co.*, Del.Super., 175 A. 266 (1934); *Hance Hardware Co. v. Howard*, Del.Super., 8 A.2d 26 (1939).

229 A.2d at 501–02.

Although the majority relies upon decisional authority from other jurisdictions to support its amendment rationale, there is significant opinion to the contrary. For example, in *Fisher v. Kentucky Unemployment Ins. Comm'n*, Ky.App., 880 S.W.2d 891 (1994), the court upheld the dismissal of an appeal from the Kentucky Unemployment Insurance Commission for failure to verify the com-

---

**3.** 25 *Del.C.* § 2712. Requirements of complaint or statement of claim.

    (c) The complaint and/or statement of claim shall be supported by the **affidavit** of the plaintiff-claimant that the facts therein are true and correct.

25 *Del.C.* § 2716. Default judgment; affidavit of defense.
Judgment by default may be entered for the plaintiff at such time and in the manner prescribed by the rules of the Superior Court, unless the defendant has previously filed in the

cause an **affidavit** that he verily believes there is a legal defense to the whole or part of such cause of action and setting forth the nature and character of the defense....

25 *Del.C.* § 2725. Procedure where claimant institutes personal action and also proceeds under this chapter.
    (a) ... In any such personal action or in the suit to avail himself of the lien, whichever is last docketed, the plaintiff shall file an **affidavit** setting out the demand in each of the suits and stating to what extent the respective demands are identical.... (emphasis supplied).

plaint. The court rejected the claimant's argument that she had substantially complied with the statute.

There is no appeal to the courts from an action of an administrative agency as a matter of right. When grace to appeal is granted by statute, a strict compliance with its terms is required. Where the conditions for the exercise of power by a court are not met, the judicial power is not lawfully invoked. That is to say, that the court lacks jurisdiction or has no right to decide the controversy.

*Id.* (citing *Kentucky Unemployment Ins. Comm'n v. Carter*, Ky.Supr., 689 S.W.2d 360, 361–62 (1985)); *accord Board of Zoning Appeals v. Hunter*, Ind.Ct.App., 533 N.E.2d 1266, 1268 (1989) ("In a proceeding for judicial review of an administrative determination, compliance with the statutory requirements for review is a condition precedent to jurisdiction.") (citing *State ex rel. Board of Zoning Appeals v. Superior Court*, 246 Ind. 317, 204 N.E.2d 658 (1965)).

Where a statute is silent on a procedural requirement, a rule of court may fill the gap. *Board of Adjustment v. Barone*, Del.Supr., 314 A.2d 174 (1973). But where the statute is specific and directive, its mandate controls. The desire to resolve the merits of a controversy, however well intentioned, does not permit a court to overrule expressed jurisdictional standards established by the General Assembly.

Apart from legislative direction, there are policy considerations which support the need for timely verification. Although the majority considers the absence of an affidavit to be a technical deficiency, verification of a document ensures that the allegations are based on merit and truth. *Drury Displays v. Board of Adjustment*, Mo.Supr., 760 S.W.2d 112, 114 (1988); *Life Medical System, Inc. v. Franklin County Comm'n*, Mo.Ct.App., 810 S.W.2d 554, 558 (1991); *In re Marriage of Pitulla*, Ill.App.Ct., 202 Ill.App.3d 103, 147 Ill.Dec. 479, 492, 559 N.E.2d 819, 832 (1990); *Sandymark Realty Corp. v. Creswell*, N.Y.Civ.Ct., 67 Misc.2d 630, 324 N.Y.S.2d 504, 506 (1971); *see Adamovich v. State*, Ind.Ct.App., 529 N.E.2d 346, 347–48 (1988). Moreover, the requirement that a party at-

test to the truth of a claim of illegality seems a reasonable prerequisite for calling into question a ruling of an administrative body. Verification also guards against the taking of appeals for frivolous purposes or solely for delay. *Hendricks v. State*, Ind.Supr., 426 N.E.2d 367, 370 (1981); *In re P.W.N.*, N.D.Supr., 301 N.W.2d 636 (1981); *Burtscher v. Burtscher*, Cal.Ct.App., 26 Cal.App.4th 720, 31 Cal.Rptr.2d 682, 686 (1994); *cf. Dozier v. Clayton County Hosp. Auth.*, Ga.Ct. App., 206 Ga.App. 62, 424 S.E.2d 632, 636–37 (1992); *In re L.M. III*, Ill.App.Ct., 205 Ill. App.3d 497, 150 Ill.Dec. 872, 875, 563 N.E.2d 999, 1002 (1990).

Because, I would reverse the Superior Court judgment for lack of jurisdiction, I do not reach the remaining issue of whether the Superior Court may "correct," *ex post*, the Prothonotary's admittedly unauthorized issuance of the writ of certiorari. Nor do I reach the merits of the Superior Court reversal of the Board's granting of a variance.

I consider the Superior Court to be without jurisdiction to decide this appeal from the Board of Adjustment. Accordingly, I respectfully dissent.