SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

Julianne E. Murray, Esq.
Murray Law LLC
109 North Bedford Street
Georgetown, DE 19947

Rae M. Mims, Esq.
Delaware Department of Justice
102 West Water Street
Dover, DE 19904

RE:     *Richard L. Haden v. Bethany Beach Police Department and the
        Criminal Justice Council*
        C.A. No. S13A-11-003 RFS

        Date Submitted:     March 31, 2014
        Date Decided:       June 30, 2014

Dear Counsel:

Before the Court is Appellee the Criminal Justice Council's (the "CJC's")

Motion to Dismiss the Appeal of Appellant Richard L. Haden ("Haden"). Also

before the Court is Haden's Motion to Amend the Notice of Appeal to a Writ of

Certiorari. The Court **GRANTS** the CJC's Motion to Dismiss for lack subject matter

jurisdiction. Regarding Haden's Motion to Amend, the Court agrees with Haden that

his Motion is not procedurally time-barred. However, because the Court considers

certiorari review of this case to be a futile endeavor, it **DENIES** Haden's Motion.

1

## FACTS & PROCEDURAL BACKGROUND

The present Motions stem from the Bethany Beach Police Department's (the "BBPD's") charging Haden with six violations of its regulations. On March 3, 2013 Haden, a lieutenant and sixteen-year veteran of the BBPD, was working the noon to midnight shift. At around 8:30 p.m., Haden responded to assist BBPD Patrolman Zachery Bonniwell ("Boniwell") in a traffic stop which resulted in Bonniwell's arresting the driver, Joseph F. Burke ("Burke"), for driving under the influence of alcohol. According to Haden, after he arrived on the scene, Burke said to Haden "We're neighbors. I know who you are. We're going to see each other all the time." Bonniwell was out of ear shot during this conversation. Haden, who did not recognize Burke, found these comments odd but nonthreatening.

Burke was then brought back to the BBPD for booking. At some point, Burke and Bonniwell were in a detention area being videotaped. This tape did not have audio. In it, Bonniwell has his back to the camera, standing next to an Automated Fingerprint Identification System ("AFIS"). Bonniwell was taking Burke's personal information. Burke was in the front left of Bonniwell, who was putting Burke's information into the AFIS. In the tape, Haden suddenly rushes into the area and grabs Burke by the left side of his throat. Staring into Burke's face, Haden is claimed to have said "You want to threaten my wife and family now that I'm in front of you?"

2

This prompted Burke to lift both of his arms and push Haden back. Burke's push caused Bonniwell and Haden to attempt to subdue him. The Board noted that the BBPD's charge of excessive force by Haden against Burke was limited to Haden's first physical contact with Burke (*i.e.*, Haden's grabbing Burke by the throat), and not Haden and Bonniwell's subsequent physical contact used in subduing Burke. The Board believed that this subsequent contact was objectively reasonable under the circumstances, even though Burke was provoked by Haden.

Before concluding his shift, Haden completed two reports, each containing the same language. In them, Haden described Burke's remarks to him, which, according to Haden, were particularly threatening and targeted to Haden and his family. Haden also stated that he moved towards Burke in the detention area and asked if he was being threatened. Burke then stood up, which caused Haden to reach for Burke's throat in an attempt to locate a pressure point which would subdue Burke. This failed. Burke then tried to grab Haden's hand, which cause Burke to place his hand on Burke's throat and push him back in his seat. Once seated, Haden asked again if Burke was threatening his family or him.

The Board found that the video contradicted Haden's version of the story, and did not find his explanation credible. According to the Board, Haden stated during questioning that he was angry with Burke for his remarks, and entered the detention

3

area with the intention of engaging in a physical altercation with Burke in order to let Burke know that Haden "was the Alpha male." The Board found that Haden grabbed Burke in anger, and that Burke did not pose an imminent threat to Haden, Bonniwell, or others. The Board also found that Burke, who was not handcuffed, was not a flight risk. Further, the Board considered Haden's use of force punitive, rather than for the use of subduing Burke. Lastly, the Board found that the statements made by Haden in his reports were false.

Chapter 92 of Title 11 of the Delaware Code, called the Law-Enforcement Officers' Bill of Rights ("LEOBOR"), grants law-enforcement officers charged with misconduct the right to a hearing before an impartial trial board (the "Board") of officers before departmental discipline is imposed. Under 11 *Del. C.* § 9205(b), if an impartial board cannot be convened internally, a board of three or more members shall be convened under the auspices of the CJC to hear the matter. In Haden's case, the Board convened by the CJC consisted of Senior Lieutenant Douglas G. Merrill of the New Castle County Police Department, Lieutenant Eric L. Hamm of the Delaware State Police, and Lieutenant Jason Pires of the Dover Police Department.

The Board met on November 12, 2013 at the Bethany Beach Municipal Building. The Board heard evidence as to the charged violations, deliberated, and announced its decision on the record. Haden pled guilty to two of the charged

4

violations. The Board dismissed another charge as duplicative, and then found the three remaining charges substantiated by evidence. These three charges involved use of excessive, unnecessary, or unreasonable, yet non-lethal force, and knowingly making a false official report or causing to be entered into a book or record inaccurate, false, or improper entries or misrepresentation of facts. The Board memorialized its findings in a written opinion on November 25, 2013.

On November 26, 2011, Haden filed a notice of appeal of the Board's decision to this Court. On January 8, 2014, the CJC moved to dismiss the appeal, claiming that this Court lacked subject matter jurisdiction to hear it. On January 24, 2014, Haden responded to the merits of Haden's motion to dismiss, and requested that if the Court found that it lacked jurisdiction over his appeal, Haden requested leave to amend the notice of appeal to a writ of certiorari in order to establish jurisdiction in this Court. Haden made this request in a concurrently filed motion to amend the notice of appeal. On February 4, 2014, the Court *sua sponte* raised the issue of whether its jurisdiction over a writ of certiorari was time-barred. The parties submitted their responses to this issue.

5

## ANALYSIS

### Parties' Contentions as to the CJC's Motion to Dismiss

The CJC argues that this Court should dismiss Haden's initial appeal for lack of subject matter jurisdiction under this Court's Civil Rule 12(b)(1). The CJC asserts that Haden has apparently filed his appeal under this Court's Civil Rule 72, which applies only to appeals "permitted by law."[1] It further asserts that the CJC is not listed in 29 *Del. C.* § 10161(a) as an administrative agency to whom the APA applies. Moreover, this Court has clearly held in prior precedent that it does not have jurisdiction over appeals from decisions rendered pursuant to LEOBOR.[2] Neither LEOBOR nor the Administrative Procedures Act (the "APA") renders appellate rights to law enforcement officers under LEOBOR's purview.[3]

Haden counters that the APA does grant him appellate rights because, even though the CJC is not listed in Section 10161(a) as an administrative agency to whom the APA applies, 29 *Del. C.* § 10161(b) states that "[a]ll agencies which are not listed

---

[1] Super. Ct. Civ. R. 72 ("This Rule shall apply to appeals to the Superior Court from all commissions, boards, hearing officers under the Personnel Rules for Non-Judicial Employees, or courts from which an appeal may at any time lie to the Superior Court to be tried or heard on the record made below. When an appeal is permitted by law, a party may appeal by filing a notice of appeal with the Prothonotary of the appropriate county within the time prescribed by statute.").

[2] The CJC cites *Smith v. Dep't of Pub. Safety of the State of Del.*, 1999 WL 1225250, at *11 (Del. Super. Oct. 29, 1999), *aff'd*, 2000 WL 1780781 (Del. Nov. 30, 2000) and *Wescott v. City of Milford Police*, 1995 WL 465188, at *4 (Del. Super. July 31, 1995) for this proposition.

[3] The CJC cites *Wescott*, 1995 WL 465188, at *4 & n.9 for this proposition.

6

in subsection (a) of th[at] section shall only be subject to subchapters I and II of this chapter and §§ 10141, 10144, and 10145 of this title."[4] In turn, 29 *Del. C.* § 10145 states that "[n]o petition, appeal or other application or relief of the Court shall be considered as having been taken or made until it has been filed with the Prothonotary and served upon the agency in accordance with the rules of the Court."[5] Thus, Haden argues, Section 10145's reference to appeals in general permits this Court to hear appeals from *all* agencies, regardless of whether they are listed in Section 10161(a).[6]

---

[4] 29 *Del. C.* § 10161(b).

[5] 29 *Del. C.* § 10145.

[6] The CJC responds that 29 *Del. C.* § 10142, contained in the same subchapter as Section 10145, is the statute applicable to appeals of "case decisions" rendered by an administrative agency. "Case decisions" are dealt with in Subchapter III of the APA. Section 10161(b) does not in any way link an unlisted agency like the CJC to either Section 10142 or Subchapter III. Section 10161(b) does, however, provide that Subchapter II, which deals with agency *regulations*, applies to unlisted agencies. Thus, at most, this Court may review the CJC's *regulations*, but not their *case decisions*. Furthermore, Haden's pointing to the CJC's enabling statute does not, the CJC argues, provide any assistance to Haden because by the CJC's enabling statute's words, the CJC is applicable to Chapters 100 and 101 of Title 29. Chapter 100 deals with the Freedom of Information Act, and is therefore irrelevant. Chapter 101 is the APA, but that, the CJC claims, only leads to the same conclusion: pursuant to the APA, this Court can only review the CJC's *regulations*, not *case decisions*.

Haden counters that Section 10142 is implicated only after Section 10145 is implicated because the former provides guidance on how judicial review is conducted, rather than how it is commenced. The commencement of an appeal, Haden claims, is covered in Section 10145.

Haden also notes that the CJC's argument regarding review of its *regulations* as opposed to its *case decisions* is without merit because Section 10145 does not limit itself to review of an agency's *regulations*. Also, Haden asserts that the CJC's enabling statute, Section 8702, does not limit its application to a particular subchapter of the APA. Rather, by the very words of Section 8702, it is reasonable to infer that all subchapters of the APA apply to the statute. To argue that the CJC's enabling statute does not provide for appellate rights ignores Section 8702's clear reference to Chapter 101 of Title 29 of the Delaware Code, which leads to Section 10161, and ultimately, Section 10145.

7

Additionally, Haden complied with Section 10145 by timely filing his notice of appeal and giving that notice to the CJC. Haden also notes that 11 *Del. C.* § 8702(c) states that the CJC's rules of procedure must comply with Chapters 100 and 101 of Title 29 of the Delaware Code, which includes Section 10145, further demonstrating that the Delaware Code contemplates that decisions rendered by the CJC are appealable.

Haden claims that additional support for his position can be found in this Court's recent decision in *McGee v. Council on Police Training*.[7] That case, Haden states, involved a Delaware State Trooper's appeal of a decision rendered by the Council on Police Training (the "COPT"). Haden points out the appellant in that case filed his appeal in exactly the same manner as the appellant in this case. The COPT, like the CJC, is not listed in Section 10161(a); yet the appellee in *McGee* raised no issue as to this Court's jurisdiction to hear the appeal.[8]

---

[7] 2014 WL 662327 (Del. Super. Jan. 17, 2014), *aff'd,* 2014 WL 2466327 (Del. June 2, 2014).

[8] The CJC counters that Haden ignores this Court's decisions in *Smith* and *Wescott*, *supra*, in an attempt to posit that *McGee* is now the controlling precedent. The CJC claims that Haden misinterprets *McGee* in that the holding in that case, according to the CJC, did not make the blanket ruling that this Court maintains appellate jurisdiction over the decisions of any agency, regardless of whether they are listed in Section 10161(a). *McGee* involved the COPT. Under 11 *Del. C.* § 8404A(3), appeals to this Court are permitted in certain circumstances. LEOBOR, the CJC claims, contains no such language.

Haden responds that, while the COPT's enabling statute references an appeal right, whereas the CJC's enabling statute does not, the CJC still refers back to the APA; and thus an appeal right under the CJC exists. Further, Haden did not ignore the prior precedent like *Smith*

**Discussion as to the CJC's Motion to Dismiss**

"To the extent that this Court has appellate jurisdiction from certain boards and commissions, that jurisdiction is specifically conferred by the statute creating the board and/or commission . . . or by the Administrative Procedures Act, 29 *Del. C.* Ch. 101."[9]  The CJC is codified in Chapter 87 of Title 11 of the Delaware Code. LEOBOR is codified in Chapter 92 of the same title.  Neither chapter contains any language regarding an adversely affected party's appellate rights.  This absence from LEOBOR is puzzling because LEOBOR clearly lays out the procedure regarding hearings on officer discipline.

Thus, the Court looks to the APA.  Haden's principal argument is that because Section 10161(b) clearly makes Section 10145 applicable to administrative bodies not listed in Section 10161(a), and because Section 10145 discusses commencing an appeal, the decisions of those unlisted bodies must be appealable.  This cannot be correct.  "The goal of statutory construction is to determine and give effect to legislative intent.  An unambiguous statute precludes the need for judicial

---

and *Wescott* because those cases state that the APA can be an avenue to appellate rights, which, as argued, Haden has established.

[9] *Wescott v. City of Milford Police*, 1995 WL 465188, at *4 (Del. Super. July 31, 1995).

9

interpretation, and the plain meaning of the statutory language controls."[10] Ambiguity arises only "if [the] statute is susceptible of different conclusions or interpretations or if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[11] The Court does not find any of the APA's provisions relating to appellate rights ambiguous.

Section 10161(b) states that those bodies not listed in the preceding subsection are affected only by Subchapter I ("Policy and Definitions"), Subchapter II ("Agency Regulations"), and Sections 10141, 10144, and 10145 of the APA. Conspicuously absent is Section 10142, titled "Review of Case Decisions." That section reads that "[a]ny party against whom a case decision has been decided may appeal such decision to the Court."[12] Clearly, if an appellant wishes to appeal a case decision rendered by an administrative tribunal through invocation of the APA, he must do so under Section 10142. Thus, Section 10142's absence from Section 10161(b) establishes that the APA does not provide appellate rights to an appellant of a case decision rendered by a body not listed in Section 10161(a). The fact that Section 10145 is applicable to those unlisted bodies only demonstrates that if appellate rights

---

[10] *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 932–33 (Del. 2007) (citations omitted) (internal quotation marks omitted).

[11] *Id.* (citation omitted) (internal quotation marks omitted).

[12] 29 *Del. C.* § 10142(a).

10

pertaining to those bodies exist *elsewhere* (*i.e.*, in their own enabling statutes), then Section 10145 lays out the procedure to be followed. The Court cannot conclude that Section 10145's reference in Section 10161(b) serves as the linchpin which renders any decision from any lower body appealable under the APA, regardless of whether it is listed in Section 10161(a).[13]

Based on the above, the CJC's Motion to Dismiss based on this Court's lack of subject matter jurisdiction is **GRANTED**.

---

[13] In *Maurer v. Council on Police Training*, this Court noted how the COPT, the body which was the subject of the *McGee* case upon which Haden relies, was a body not listed in Section 10161(a). *Maurer v. Council on Police Training*, 2007 WL 625903, at *3 ("The COPT is not one of the agencies listed in the Administrative Procedures Act ("APA") § 10161(a) (29 *Del. C.*). Therefore, pursuant to the APA § 10161(b), the APA's Review of Case Decision section, § 10142, does not apply to an appeal from the COPT. A party suffering an adverse ruling in a COPT hearing has a right to appeal to the Superior Court under 11 *Del. C.* § 8404A(3)"). Thus, if a body is not listed in Section 10161(a), appellate rights pertaining to that body's case decisions must come from a source other than the APA. *See id. See also Mumford & Miller Concrete, Inc. v. Delaware Dep't of Labor*, 2011 WL 2083940, at *2 & n.3 (Del. Super. Apr. 19, 2011) ("The Secretary's decision is final and unappealable. The Superior Court has no statutory or legal authority to review the Secretary of Labor's decision pursuant to the Administrative Procedures Act under 29 *Del. C.* §10161(b), which states that decisions of administrative agencies not listed in Section 10161(a) may not be appealed. The Department of Labor is not listed in Section 10161(a).").

The Court does not find that the *McGee* decision offers Haden any support. That case dealt with the COPT. The COPT's enabling statute specifically grants parties appeal rights. Under 11 *Del. C.* § 8404A(3), "[t]he ultimate findings of the Council shall be final, except that any ruling adverse to any party participating in the hearing may be appealed to the Superior Court . . . ." 11 *Del. C.* §8404A(3). It is true that the enabling statute also references the APA itself. Under 11 *Del. C.* § 8404A(4), "[a]ll hearings shall be conducted in accordance with the Administrative Procedures Act [Chapter 101 of Title 29]." 11 *Del. C.* § 8404A(4). However, if Haden were correct, and the APA itself by virtue of Section 10145 made all decisions rendered by the COPT appealable, Section 8404A(3) would be emasculated.

11

**Parties' Contentions as to Haden's Motion to Amend**

Because the Court grants the CJC's Motion to Dismiss, it will address Haden's Motion to Amend. Haden seeks to amend his notice of appeal to a writ of certiorari. He argues that the court should grant this Motion because fundamental due process suggests that a reviewing authority should be available to him. Haden contends that substantial errors occurred below, which relate to due process and are constitutional in nature, and require this Court's review. He also contends that no prejudice will occur on the CJC's part if the Court grants this Motion.

Haden further argues that his request for an amendment to a writ of certiorari is not time-barred. Delaware precedent holds that a writ of certiorari to this Court is the functional equivalent of an appeal; therefore, situations involving a defective procedure in filing appeals is comparable to a defective petition for a writ of certiorari.[14] Additionally, where no prejudice will result to the other party, appeals should not be dismissed on technicalities.[15] Haden stresses that his notice of appeal was filed one day after the CJC rendered its decision. Thus, if the Court equates a petion for writ of certiorari to a notice of appeal, Haden was well within the thirty-day time limit. He also had no reason to believe that his seeking review of the CJC's

---

[14] Haden cites *DI's, Inc. v. McKinney*, 673 A.2d 1199, 1201 (Del. 1996) (citing and quoting *Chadwick v. Janaman*, 349 A.2d 742, 743 (Del. 1975)) for this proposition.

[15] Haden cites *Di's, Inc.*, 673 A.2d at 1202 for this proposition.

12

decision should have proceeded through a route other than the filing of an ordinary appeal. Moreover, no prejudice will result to the CJC if the Court grants this Motion. Overlaying all of this, Haden contends, is that due process requires that Haden receive a full and fair hearing on the merits.

The CJC counters that in order for this Court to grant certiorari to Haden, the judgment below must be final, with no other available basis for review. The CJC argues that its decision below was not final because, after the Board rendered its decision and Haden received his letter of intent to terminate him from BBDP's police chief, Haden appealed to a Police Disciplinary Grievance Committee (the "Grievance Committee"), who heard his case on January 30, 2014. The Committee made its recommendation to the Bethany Town Council (the "Town Council"), which met on February 14, 2014, and voted unanimously to accept the Committee's recommendation that Haden be terminated.[16]

Furthermore, the CJC counters that a writ of certiorari is not identical to an appeal. Rather, certiorari requires that a very specific standard be met. Even if the

---

[16] Haden chastises the CJC's commenting that other avenues were available to him, while at the same time arguing that the CJC's decision was not appealable. Additionally, Haden points out that the CJC harps that its decision is not appealable (*e.g.*, final), yet not so final as to permit the Court to grant certiorari review. Haden also argues that the CJC's pointing to the other avenues available to him means nothing because neither the Committee nor the Town Council demonstrated that they reviewed how the Board came to its conclusions, as opposed to taking its decision at face value.

13

Court finds that Haden's appeal is permitted *procedurally*, that does not mean that Haden should be entitled to certiorari review *substantively*. Haden's bare claim of errors occurring below relating to due process and constitutional violations is not enough to establish that this Court should grant him certiorari review. Furthermore, Haden received his due process by having the opportunity to present his case before the impartial Board.

The CJC claims that it expects that Haden will allege that the BBPD violated his rights under LEOBOR during its internal investigation of him. The CJC argues, however, that LEOBOR provides *more* due process protection than normal constitutional analysis. The CJC also asserts that if it is to be held accountable for an alleged LEOBOR violation committed by a police department, it would have a chilling effect, as no party would be willing to serve on the CJC.

**Discussion as to Haden's Motion to Amend**

The Delaware Supreme Court has held that a petition for certiorari review is the functional equivalent of a notice of appeal, and that, therefore, the failure to appropriately verify a petition for a writ of certiorari is comparable to other defective notices of appeal.[17] Furthermore, the high Court has also "adopted the modern view

---

[17] *Di's, Inc.*, 673 A.2d at 1202 ("The [9 *Del. C.*] § 4918 petition [for a writ of certiorari] is the functional equivalent of a notice of appeal. The writ of certiorari similarly takes the place of a citation issued by the Prothonotary pursuant to Superior Court Civil Rule 72(e). Certiorari to

that, where possible and where there is no prejudice, appeals should not be dismissed on technicalities."[18] Thus, with the similarity between a petition for certiorari review and a notice of appeal established, and with the liberal approach courts should employ in handling erroneously submitted, yet timely appeals, this Court is inclined to hold that Haden's petition for a writ of ceriorari is not time-barred. Haden filed his notice of appeal one day after the Board issued its decision, within the thirty-day period, thus putting the CJC on immediate notice of the underlying litigation.

However, the Delaware Supreme Court's comparison of a petition for certiorari review with a notice of appeal only answers the question of whether Haden's Motion to Amend is not barred *procedurally*. There remains the question of whether Haden may seek certiorari review in this Court *substantively*, as the substance of certiorari review is quite different from an appeal.

"[A] writ [of certiorari] is simply a form that calls up, for review, the record from the lower court or tribunal. The purpose of the writ is to permit a higher court to review the conduct of a lower tribunal of record."[19] It "is *not* a substitute for, or

---

the Superior Court is, in effect, an appeal, differing only by being confined to the record and requiring a mere ministerial act on the part of a judge in ordering issuance of the writ." (citing and quoting *Chadwick*, 349 A.2d at 743) (internal quotation marks omitted)).

[18] *Id.* (internal quotation marks omitted).

[19] *Maddrey v. Justice of the Peace Court 13*, 956 A.2d 1204, 1213 (Del. 2008) (citations omitted) (internal quotation marks omitted).

the functional equivalent of, an appeal."[20] Certiorari review by this Court "differs fundamentally from appellate review because review on certiorari is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings."[21]

Two threshold requirements must be met in order to receive certiorari review: first, the judgment below must be final; second, there must exist no alternative routes for review.[22] If these requirements are met, "th[is] [C]ourt must determine if the petition raises the type of claim reviewable on certiorari."[23] This Court will "not consider the merits of the case. It considers only those issues historically considered at common law; namely, whether the lower tribunal (1) committed errors of law, (2) exceeded its jurisdiction, or (3) proceeded irregularly."[24]

---

[20] *Id.* (citation omitted) (emphasis in original).

[21] *Id.* (citations omitted) (internal quotation marks omitted) (italics omitted).

[22] *Id.* (citations omitted).

[23] *Id.* (italics omitted).

[24] *Id.* The Delaware Supreme Court has, in turn, delineated these requirements. *Maddrey*, 956 A.2d at 1213–14 ("A decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has proceeded illegally or manifestly contrary to law. Reversal on jurisdictional grounds is appropriate only if the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction. Reversal for irregularities of proceedings occurs if the lower tribunal failed to create an adequate record for review." (citation omitted) (internal quotation marks omitted) (internal brackets omitted)).

In conducting this extremely deferential review, the Court is limited in the evidence it may consider. On review, "the Superior Court cannot look behind the face of the record."[25] "For a court to do anything more, such as combing the transcript for an erroneous evidentiary ruling . . . converts the limited certiorari review . . . into an impermissible full appellate review that is inconsistent with . . . the function of the common law writ . . . ."[26] The Delaware Supreme Court has explained what is reviewable by this Court when conducting certiorari review. "[T]he record reviewable by the Superior Court on a common law writ of certiorari consists only of the complaint initiating the proceeding, any written answer or response, and the docket entries."[27]

The Court considers certiorari review of this case to be a futile exercise. First, the Board's decision below was not final. As the CJC explained, the Board's decision

_____

[25] *Id.* at 1215.

[26] *Id.*

[27] *Id.* at 1207 (italics omitted). An example of an error that this Court could review on certiorari would be an irregularity in the docket entries below. *Id.* at 1215. If the lower tribunal employed the incorrect burden of proof by stating in its docket entries that it was satisfied that a party had not proven *beyond a reasonable doubt*, as opposed to stating that it was satisfied that a party had proven *by a preponderance of evidence*, such would be an error that would trigger certiorari review from this Court. *Id.* "Similarly, the proper service of the complaint and irregularity of process, a lack of jurisdiction, or a remedy ordered outside of statutory authority would also be reviewable from the face of the record." *Maddrey* 956 A.2d at 1215.

17

was appealed to the Grievance Committee, who made a recommendation to the Town Council.[28]

Second, even if it is assumed that the Board's decision was final, certiorari review would still be fruitless. There is no allegation that the Board, in rendering its decision exceeded its jurisdiction or proceeded irregularly. Moreover, the very limited evidence to which the Court may look if it were to conduct certiorari review (*i.e.*, Haden's appeal and the Board's opinion) establishes that no errors of law were committed. The Board, composed of three neutral officers, made certain factual findings. These findings were based on video evidence and Haden's guilty pleas to two charges. Thus, these findings cannot be considered errors "manifestly contrary to law."[29] Furthermore, the Court may not comb through any transcripts, or any other form of evidence impermissible on certiorari review, in an effort to contradict these findings.[30]

Regarding the Board's exclusion of Haden's witness, who was to testify that the BBDP violated LEOBOR during its internal investigation of him, the Board's

---

[28] Haden's bare assertion that these bodies took the Board's decision at face value does not, nevertheless, negate the fact that the Board's decision was indeed not final.

[29] *See Maddrey* 956 A.2d at 1214 (citation omitted) (internal quotation marks omitted).

[30] *Id.* at 1215.

exclusion of that witness was permissible. Two provisions within LEOBOR discuss

evidentiary issues in relation to hearings. The first is 11 *Del. C.* § 9205(c):

> Evidence which possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs shall be admissible in evidence and given probative effect. The tribunal conducting the hearing shall give effect to the rules of privilege recognized by law and may exclude incompetent, irrelevant, immaterial and unduly repetitious evidence. All records and documents which any party desires to use shall be offered and made a part of the record. Documentary evidence may be received in the form of copies of excerpts or by incorporation by reference.[31]

The second is 11 *Del. C.* § 9206:

> No evidence may be obtained, received or admitted into evidence in any proceeding of any disciplinary action which violates any of the rights established by the United States Constitution or Delaware Constitution of by this chapter. The tribunal may not enter any judgment or sustain any disciplinary action based on any evidence obtained in violation of the officer's rights as contained in this chapter.[32]

While it is true that the Board may not accept evidence violative of the law, the Board

may also exclude irrelevant evidence. As mentioned, in making its factual findings,

the Board had before it video evidence and Haden's guilty pleas to two charges.

Haden did not challenge the legitimacy of this evidence below, and has made no such

---

[31] 11 *Del. C.* § 9205(c).

[32] 11 *Del. C.* § 9206.

19

challenge to this Court.  Thus, the Board was entitled to consider the testimony of Haden's witness irrelevant to the proceedings.

Based on the above, Haden's Motion to Amend the Notice of Appeal to a Writ of Certiorari is **DENIED**.

**IT IS SO ORDERED**.

Very truly yours,

*/s/ Richard F. Stokes*

Richard F. Stokes

Cc: **Prothonotary**
   **Judicial Case Manager**
   **W. Michael Tupman, Esq.**
      Delaware Department of Justice
      102 West Water Street, 3rd Floor
      Dover, DE 19904